## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

SLAM DUNK I, LLC, on behalf of itself
and all others similarly situated,

     Plaintiff,

     v.

CONNECTICUT GENERAL LIFE
INSURANCE COMPANY,

     Defendant.

Case: 1:19-cv-21996-MGC

**DEFENDANT CONNECTICUT GENERAL LIFE INSURANCE COMPANY'S
MOTION TO DISMISS SLAM DUNK'S AMENDED AND SUPPLEMENTAL
CLASS ACTION COMPLAINT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES..........................................................................................ii

INTRODUCTION ...................................................................................................... 1

STATEMENT OF THE CASE ....................................................................................... 2

    A.    Slam Dunk And Its Policies............................................................... 3

    B.    Slam Dunk's Complaints.................................................................... 6

ARGUMENT ........................................................................................................... 8

I.    Slam Dunk Fails To State A Plausible Claim For Breach Of Contract .................... 8

    A.    Slam Dunk's Breach Of Contract Claim Ultimately Rests On The Same Interpretation Of The Policies That The Court Previously Rejected .............. 9

        1.    Slam Dunk does not allege any adjustments of the Policy Rates......... 9

        2.    This Court's dismissal of the initial Complaint requires dismissal of Slam Dunk's only possible theory ................................................12

    B.    The Policies Explicitly Permit Application Of Rates Based On Attained Age.......................................................................................................12

    C.    Slam Dunk's Interpretation Of The COI Provision Is Unreasonable ...........13

II.    Slam Dunk Fails To State A Claim For Breach Of The Implied Covenant Of Good Faith And Fair Dealing ...............................................................................14

CONCLUSION .........................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..................................................................................... 8

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ..................................................................................... 8

*Centurion Air Cargo, Inc. v. United Parcel Service Co.*,
    420 F.3d 1146 (11th Cir. 2005) ...................................................................15

*Day v. Taylor*,
    400 F.3d 1272 (11th Cir. 2005) ................................................................5, 9

*G&G TIC, LLC v. Alabama Controls, Inc.*,
    324 F. App'x 795 (11th Cir. 2009) ............................................................... 5

*In re Lincoln National COI Litigation*,
    269 F. Supp. 3d 622 (E.D. Pa. 2017) ..........................................................11

*Maxon v. Sentry Life Insurance Co.*,
    2019 WL 4540057 (W.D. Wis. Sept. 19, 2019) ................................... 13, 14

*Norem v. Lincoln Benefit Life Co.*,
    737 F.3d 1145 (7th Cir. 2013) ..................................................... 13, 14

*United States ex rel. Osheroff v. Humana Inc.*,
    776 F.3d 805 (11th Cir. 2015) ..................................................................3, 5

*Patel v. Specialized Loan Servicing, LLC*,
    904 F.3d 1314 (11th Cir. 2018) ...................................................................14

*Randall v. Scott*,
    610 F.3d 701 (11th Cir. 2010) ...................................................................... 8

*Resnick v. AvMed, Inc.*,
    693 F.3d 1317 (11th Cir. 2012) ...................................................................15

*Tiara Condominium Ass'n, Inc. v. Marsh & McLennan Cos., Inc.*,
    607 F.3d 742 (11th Cir. 2010) .....................................................................15

*Yue v. Conseco Life Insurance Co.*,
    2011 WL 210943 (C.D. Cal. Jan. 19, 2011) ................................................11

*Zapata v. Royal Caribbean Cruises, Ltd.*,
    2013 WL 1296298 (S.D. Fla. Mar. 27, 2013)................................................................. 5


**State Cases**

*Ahearn v. Mayo Clinic*,
    180 So. 3d 165 (Fla. Dist. Ct. App. 2015)....................................................15

*Hatadis v. Achieva Credit Union*,
    159 So. 3d 256 (Fla. Dist. Ct. App. 2015)....................................................12

*QBE Insurance Corp. v. Chalfonte Condominium Apartment Ass'n, Inc.*,
    94 So. 3d 541 (Fla. 2012)................................................................................15

*Swire Pacific Holdings, Inc. v. Zurich Insurance Co.*,
    845 So. 2d 161 (Fla. 2003) ............................................................................12


**Statutes and Regulations**

Fla. Stat. § 95.11(2)(b) ................................................................................................... 8

Fla. Stat. § 625.121 .......................................................................................................14

Fla. Stat. § 627.062 .......................................................................................................14

Fla. Admin. Code r. 69O-149.006 ...............................................................................14

Fla. Admin. Code r. 69O-149.023 ...............................................................................14


**Other Authorities**

*New Appleman on Insurance* (Law Library ed. 2019)............................................13

*American Heritage Dictionary* (4th ed. 2000) ......................................................13

ASOP No. 2, *Nonguaranteed Charges or Benefits for Life Insurance Policies and*
    *Annuity Contracts* (rev. ed. Mar. 2013)................................................. 13, 14

ASOP No. 24, *Compliance with the NAIC Life Insurance Illustrations Model*
    *Regulation* (rev. ed. Dec. 2016) ...............................................................14

Defendant Connecticut General Life Insurance Company ("Connecticut General") respectfully moves to dismiss Plaintiff Slam Dunk I, LLC's ("Slam Dunk") Amended and Supplemental Class Action Complaint (ECF No. 69).

## INTRODUCTION

This is Slam Dunk's second attempt to claw back premiums it paid on its portfolio of Connecticut General group universal life ("GUL") insurance policies (collectively, the "Policies"). Slam Dunk's initial Complaint (ECF No. 1) challenged Connecticut General's failure to *reduce* cost of insurance ("COI") rates on the Policies. Although the contract states that Connecticut General "may" adjust COI rates from time to time, the Complaint alleged—contrary to that contractual language—that Connecticut General was obligated to adjust (and, more specifically, *reduce*) its COI rates in light of improving mortality expectations. Compl. ¶¶ 4, 8, 35. The Court properly rejected that theory and dismissed the Complaint. Order Granting Mot. to Dismiss (ECF No. 64).

In its Amended and Supplemental Class Action Complaint, Slam Dunk continues to press that same argument, while also adding a new theory. *See, e.g.*, Am. Compl. ¶ 3. After never having alleged in its initial Complaint that Connecticut General ever adjusted or increased any COI rates on Slam Dunk's Policies, Slam Dunk now asserts that Connecticut General did in fact make COI rate "adjustments" within the five-year statute-of-limitations period preceding the filing of the Complaint. *See id.* ¶¶ 35-37, 48. Furthermore, Slam Dunk asserts Connecticut General breached its contractual obligations because those "adjustments" allegedly were not based solely, or at least principally, on expectations of future mortality experience. *Id.* ¶¶ 4-5.

There is a good reason Slam Dunk never made these factual allegations or advanced this theory previously. As shown by COI rate tables for Slam Dunk's Policies (the "Rate Tables"), Connecticut General made no such adjustments. Rather, the COI rates that Slam Dunk challenges (*i.e.*, the "increases" to which Slam Dunk refers in its Amended Complaint) have been in effect for a decade. They involved no adjustment but rather, constituted Connecticut General's implementation of the COI rates according to the insured's age, as spelled out in the existing COI Rate Tables for Slam Dunk's Policies. These COI Rate Tables, which are common features of universal life insurance policies,

1

contain rates corresponding to each year of an insured's life.  The rates in these tables generally increase with age, reflecting the progressively greater risk of death as an insured individual grows older.  The important point for purposes of considering Slam Dunk's Amended Complaint, however, is that Slam Dunk does not—and cannot—allege that Connecticut General adjusted the Rate Tables applicable to Slam Dunk.

As a result, Slam Dunk ultimately is left with the same theory of its previously-dismissed Complaint—*i.e.*, the assertion that given purported improvements in future mortality experience, Connecticut General breached its contractual obligations by "fail[ing] to adjust COI rates downward."  Am. Compl. ¶ 3.  This Court already rejected that theory, however, properly recognizing that Slam Dunk's assertion flatly contradicts the "may" language of the contract.  *See* Dec. 19, 2019 Hearing Tr. at 18.

Slam Dunk's claims fail for other reasons as well.  First, the age-based COI rates within the existing COI Rate Tables are explicitly permitted by the contract, which states that COI rates "are based on the Insured's Attained Age," among other things.  Am. Compl., Ex. A, at 18.  That makes sense.  As Slam Dunk recognizes, age is "tied directly to expectations of future mortality experience."  Am. Compl. ¶ 33.  Additionally, Slam Dunk's interpretation of the Policies—obligating Connecticut General to base any actual adjustments to COI rates solely on mortality—contradicts the plain text of the Policies and is inconsistent with both actuarial principles and state regulatory frameworks.

In sum, while Slam Dunk tries to creatively plead around the flaws of its initial Complaint, it again runs up against the plain text of the Policies.  Slam Dunk fails to state a claim for breach of contract or breach of the implied covenant of good faith and fair dealing, and the Amended Complaint should be dismissed with prejudice.

## STATEMENT OF THE CASE

This case began with a May 16, 2019 Complaint, alleging that Connecticut General breached life insurance policies by failing to reduce COI rates despite improving mortality experience.  *See* Compl. ¶¶ 4, 8, 35.  The Court rejected that theory:  "[T]he policy here clearly states the defendant *may* adjust the COI rates from time to time," thus "refut[ing]" Slam Dunk's assertion that Connecticut General was "*required* to adjust the rates" downward in light of improving mortality experience.  Dec. 19, 2019 Hearing Tr. at 18

(emphases added).   Nowhere in the Complaint did Slam Dunk allege that Connecticut General had ever adjusted or increased the COI rates in the years since Slam Dunk acquired the Policies in 2010.[1]

Now, desperate to keep this case alive, Slam Dunk claims to have suddenly discovered such "adjustments" in the five years preceding the May 2019 Complaint, and it adds a new theory challenging those purported "adjustments."  Am. Compl. ¶ 37.  Because mortality experience was allegedly improving, Slam Dunk asserts, the Policies required Connecticut General either to reduce COI rates or, at minimum, to refrain from adjusting the rates upward.  *Id.* ¶¶ 2-3, 5, 8, 49, 62.  The original Complaint did not so much as allude to these "adjustments," and for good reason:  As the contract documents show, the purported COI rate increases that Slam Dunk challenges in its Amended Complaint did not involve any adjustment to the Policies' COI rates.

### A.    Slam Dunk And Its Policies

Slam Dunk is a life settlement company that allegedly purchased the coverage of 22 individuals under 11 Connecticut General GUL certificates.  Am. Compl. ¶ 9.  GUL certificates are issued to employer groups like Hyatt and Citibank.  *See id.* ¶¶ 17, 24.  One such certificate (the "Certificate") is attached as Exhibit A to the Amended Complaint. Slam Dunk alleges that the material terms of each certificate under which it has purchased coverage are substantially similar.  *Id.* ¶ 10.

The Certificate provides that an employee may elect a death benefit "Coverage Amount" that corresponds to his or her salary.  Certificate at 8-9; *see also* Am. Compl. ¶ 25. In return, the employee agrees to a "Monthly Deduction" that is calculated using the Monthly COI Rate.  Certificate at 17.  Monthly COI Rates are defined as follows:

> The Monthly Cost of Insurance Rates are based on the Insured's Attained Age, the type of benefit, the Class of Insured and whether premiums for that Insured are paid directly to [Connecticut General] or through payroll deductions.  The Monthly Cost of Insurance Rates are determined by [Connecticut General] based on its expectations as to future mortality experience.  Adjustments in the Monthly Cost of Insurance Rates may be made by [Connecticut General] from time to time, but not more than once a

---

[1]    *See* Pl.'s Request for Judicial Notice, Ex. 2 (ECF No. 26-2) (November 30, 2010 order approving sale of Policies to Slam Dunk); Order Granting Pl.'s Request for Judicial Notice (ECF No. 43); *see also United States ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 811 (11th Cir. 2015) ("court may consider judicially noticed documents" on motion to dismiss).

year, and will apply to Insureds of the same class.  Under no circumstances will the Monthly Cost of Insurance Rates for Life Insurance ever be greater than those shown in the Table of Guaranteed Maximum Life Insurance Rates.  Such guaranteed maximum rates are based on the Commissioners 1980 Extended Term Table (age last birthday) and 4% effective annual interest.

*Id.* at 18 (the "COI Provision").  As the COI Provision indicates, there is one guarantee regarding the COI rates—they shall not exceed the maximum rates shown in the Table of Guaranteed Maximum Life Insurance Rates.  This table lists maximum rates corresponding to the insured's "Attained Age"—*i.e.*, the age the insured reaches each year.  *See id.* at 5.

Because mortality risk generally increases with age, the Certificate provides that COI rates are based on, among other things, "the Insured's Attained Age."  Certificate at 18.  COI rates for individual GUL policyholders thus correspond to the insured individual's Attained Age and generally become greater over time as the insured individual grows older.  These rates are set forth in the Rate Tables, which list COI rates by Attained Age.  Rate Tables for three of the certificates under which Slam Dunk has purchased coverage are attached as Exhibits A, B, and C to the Declaration of Anne Marie Nicholas.  One of these Rate Tables—for the Hyatt Certificate (Nicholas Decl. Ex. A)—is excerpted below:

*Figure 1: Excerpt of Rate Table for Hyatt Certificate (Individual Certificate No. 6134709)*

| Monthly Cost of Insurance | | | | | |
|---|---|---|---|---|---|
| Employee/Spouse Age as of May 1st | Monthly Cost of Insurance (Rates per $1,000) | Employee/Spouse Age as of May 1st | Monthly Cost of Insurance (Rates per $1,000) | Employee/Spouse Age as of May 1st | Monthly Cost of Insurance (Rates per $1,000) |
| 16 | 0.132 | 44 | 0.364 | 72 | 4.267 |
| 17 | 0.144 | 45 | 0.395 | 73 | 4.727 |
| 18 | 0.152 | 46 | 0.427 | 74 | 5.234 |
| 19 | 0.157 | 47 | 0.461 | 75 | 5.778 |
| 20 | 0.159 | 48 | 0.498 | 76 | 6.352 |
| 21 | 0.158 | 49 | 0.539 | 77 | 6.948 |
| 22 | 0.156 | 50 | 0.585 | 78 | 7.574 |
| 23 | 0.153 | 51 | 0.637 | 79 | 8.250 |
| 24 | 0.149 | 52 | 0.696 | 80 | 8.998 |
| 25 | 0.146 | 53 | 0.763 | 81 | 9.844 |
| 26 | 0.143 | 54 | 0.837 | 82 | 10.807 |
| 27 | 0.142 | 55 | 0.917 | 83 | 11.884 |
| 28 | 0.142 | 56 | 1.001 | 84 | 13.054 |
| 29 | 0.143 | 57 | 1.091 | 85 | 14.293 |
| 30 | 0.146 | 58 | 1.187 | 86 | 15.585 |
| 31 | 0.150 | 59 | 1.292 | 87 | 16.922 |
| 32 | 0.156 | 60 | 1.409 | 88 | 18.305 |
| 33 | 0.163 | 61 | 1.540 | 89 | 19.747 |
| 34 | 0.171 | 62 | 1.689 | 90 | 21.270 |
| 35 | 0.181 | 63 | 1.856 | 91 | 22.920 |
| 36 | 0.193 | 64 | 2.042 | 92 | 24.780 |
| 37 | 0.207 | 65 | 2.243 | 93 | 27.074 |
| 38 | 0.224 | 66 | 2.457 | 94 | 30.282 |
| 39 | 0.242 | 67 | 2.685 | 95 | 35.390 |
| 40 | 0.263 | 68 | 2.931 | 96 | 44.622 |
| 41 | 0.285 | 69 | 3.202 | 97 | 63.569 |
| 42 | 0.310 | 70 | 3.510 | 98 | 82.041 |
| 43 | 0.336 | 71 | 3.861 | 99 | 88.254 |

As explained below, these tables provide the rates referred to in Paragraphs 35 and 36 of the Amended Complaint.  Such rates, found in contractual Rate Tables, are "central to the plaintiff's claim" and therefore may be considered on a motion to dismiss.  *Osheroff*, 776 F.3d at 811; *see also Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) ("if the document's contents are alleged in a complaint and no party questions those contents, [the Court] may consider such a document provided" the document is central to plaintiff's claims).[2]

---

[2]      The Certificate explicitly refers to the Monthly COI Rates described in the Rate Tables.  *See* Certificate at 17-18.  The COI rates, as listed in the Rate Tables, are thus part of the Policies themselves.  For this reason too, the Court can consider the Rate Tables on a motion to dismiss.  *See Day*, 400 F.3d at 1276 (affirming district court's consideration of contract attached to motion to dismiss because complaint's "references to the … contract [were] a necessary part of [plaintiffs'] effort to make out a claim"); *G&G TIC, LLC v. Alabama Controls, Inc.*, 324 F. App'x 795, 798 (11th Cir. 2009) ("district court's consideration of the contract referenced in" complaint and attached to motion to dismiss breach of contract claim "was proper"); *Zapata v. Royal Caribbean Cruises, Ltd.*, 2013 WL 1296298, at *6 (S.D. Fla. Mar. 27, 2013) (considering agreement on motion to dismiss because plaintiff had "placed the agreement at the center of its … claim").

To calculate the Monthly Deduction, Connecticut General multiplies the applicable COI rate, which is "based on the Insured's Attained Age," by the amount of coverage the insured individual has elected.  Certificate at 17 (the "Monthly Deduction Provision"); *see also* Am. Compl. ¶ 23 (alleging that Connecticut General "calculates the COI charge by multiplying the applicable COI rate by the net amount at risk").

### B.    Slam Dunk's Complaints

Slam Dunk's initial Complaint alleged that the COI Provision required Connecticut General to calculate COI rates "'based on' expectations of future mortality experience—and nothing else."[3]  Compl. ¶ 2; *see also id.* ¶ 32.  The premise of Slam Dunk's breach of contract and related claims was that Connecticut General "has not lowered the COI rates it charges for its GUL policies" even though "[m]ortality rates have declined significantly over the past several decades."  *Id.* ¶ 4 (emphasis omitted); *see also id.* ¶¶ 8, 35.  The Court dismissed the Complaint, ruling that the plain text of the Certificate *permits* Connecticut General to change its COI rates but does not *require* it to do so.  Dec. 19, 2019 Hearing Tr. at 18; *see also* Order Granting Mot. to Dismiss.

Slam Dunk's Amended Complaint now adds another theory, purporting to challenge "adjustments" made to COI rates applicable to its Policies (the "Policy Rates") during the five-year period preceding the filing of the Complaint.  Am. Compl. ¶ 37.  In fact, as the contractual Rate Tables show, the COI "increase[s]" (*id.* ¶¶ 35-36) that Slam Dunk alleges in its Amended Complaint were not the result of any adjustment of the Policy Rates, but rather involved only the implementation of rates set forth in existing Rate Tables.

More specifically, Slam Dunk's only concrete allegations of purported "adjustments" to Policy Rates appear in Paragraphs 35 and 36 of the Amended Complaint:

- For Individual Certificate No. 6134709, covered under the Hyatt certificate, Slam Dunk alleges that the COI increased "four times from April 30, 2015, through April 30, 2018, by approximately 8.2%, 8.5%, 8.8% and 9.2% per year";

- For Individual Certificate No. 6185028, covered under the Magellan Health Services certificate, Slam Dunk alleges that the COI increased "each year from December 31,

---

[3]    Slam Dunk's Amended Complaint repleads this same interpretation of the COI Provision, though it offers an alternative interpretation as well, namely that "the COI rate charged must be determined *principally* on [Connecticut General's] expectations of future mortality experience."  Am. Compl. ¶ 32 (emphasis added).

2014, through December 31, 2018, by approximately 8.8%, 9.7%, 10.2%, 10.6% and 19.3%"; and

- For Individual Certificate No. 6176797, covered under the Continental Air certificate, Slam Dunk alleges that the COI "increased by approximately 52.3% for the policy year 2015 over policy year 2014, remained unchanged for two years, and then increased approximately 6.7% for policy year 2018 over policy year 2017."

Am. Compl. ¶¶ 35-36.  These alleged changes were not adjustments in Policy Rates, as Slam Dunk characterizes them.  Rather, as the contractual Rate Tables demonstrate, the rates were all contained in the Policies' existing Rate Tables.

For example, the Hyatt Rate Table, which went into effect on May 1, 2009 (before Slam Dunk's acquisition of the Policies and more than a decade before Slam Dunk filed the Complaint in this case), discloses that the applicable Policy Rate for Individual Certificate No. 6134709 between May 1, 2014, and April 30, 2015, when the insured had an Attained Age of 48, was 0.498 per $1,000 of coverage.  *See* Nicholas Decl. Ex. A.  On May 1, 2015, when the insured's Attained Age increased to 49, the rate was 0.539—an increase of 8.2% over the previous policy year, the same 8.2% increase alleged in Paragraph 35 of the Amended Complaint.  As shown further below, *infra* Part I.A.1, all the other changes alleged in Paragraphs 35 and 36 likewise correspond simply to the differences in the already-existing COI rates by Attained Age.  Thus, what Slam Dunk calls "adjustments" in its Amended Complaint (*e.g.*, ¶ 37) were no such thing; they were simply application of the COI rates set forth in the existing Rate Tables.

The foundation for all of Slam Dunk's theories in this case is its allegation that mortality experience has been improving.  Am. Compl. ¶ 38.  As to its new "adjustment" theory then, Slam Dunk asserts that if and when Connecticut General makes adjustments, it must do so exclusively, or at least principally, based on mortality experience.  *Id.* ¶ 4.  And, because Slam Dunk asserts that Connecticut General "adjusted" COI rates "upward," Slam Dunk argues that Connecticut General breached its obligations under the Policies.  *Id.* ¶¶ 37, 49.  The Amended Complaint asserts two claims against Connecticut General: (1) breach of contract for failure to consider mortality "when [Connecticut General] adjusted" COI rates, including by increasing COI rates despite improving mortality experience; and (2) breach of the implied covenant of good faith and fair dealing arising from the same alleged conduct.

*Id.* ¶¶ 62, 72.  Slam Dunk purports to represent a class of GUL policyholders whose policies were "issued and [are] currently administered by Connecticut General" and whose COI rates were increased since May 16, 2014 (*i.e.*, five years before the filing of the Complaint). *Id.* ¶ 50.

## ARGUMENT

Slam Dunk's Amended Complaint fails to state a claim upon which relief may be granted and accordingly should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  "To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint may not rest on conclusory allegations, as those are "not entitled to the assumption of truth."  *Id.* at 679; *see also Randall v. Scott*, 610 F.3d 701, 709-10 (11th Cir. 2010).

## I.     Slam Dunk Fails To State A Plausible Claim For Breach Of Contract

The core allegation in Slam Dunk's initial Complaint was that improved mortality expectations obligated Connecticut General to reduce Policy Rates.  The Complaint did not allege any *increase* in rates, and the Court rejected Slam Dunk's theory that Connecticut General must *decrease* rates.

Having failed to state a breach of contract claim under the "failure to adjust" theory of the initial Complaint, Slam Dunk now asserts a new, diametrically-opposite theory, challenging purported upward "adjustments" of COI rates between May 16, 2014, and May 16, 2019.[4]  Slam Dunk alleges that mortality experience has been improving (*e.g.*, Am. Compl. ¶ 38) and that in light of that improvement, Connecticut General had two obligations under the Policies: (1) to reduce Policy Rates, *see id.* ¶ 7 ("COI rates for [Slam Dunk's] policies should have decreased"); *see also id.* ¶¶ 2-3, 5, 49, 62, and (2) to refrain from adjusting COI rates upward, *see id.* ¶¶ 2-3, 8, 49, 62.  This Court previously rejected the first

---

[4]     The allegations in the Amended Complaint are confined to the five-year period before the filing of the Complaint, reflecting Florida's five-year statute of limitations for such claims.  *See* Mot. to Dismiss (ECF No. 13) at 9-11; Reply in Supp. of Mot. to Dismiss (ECF No. 34) at 4-5.  For this reason, Slam Dunk's claims as currently pled do not fall afoul of Florida's statute of limitations.  *See* Fla. Stat. § 95.11(2)(b).  By the same token, Slam Dunk cannot claim to challenge conduct that occurred beyond the limitations period.

theory.  And as to the second, the Policies' Rate Tables show that Slam Dunk's allegations of COI increases do not involve any adjustments to the Policy Rates—either within the last five years (as Plaintiffs allege), or indeed since Slam Dunk acquired the policies.  Slam Dunk's breach of contract claim accordingly should be dismissed with prejudice.

### A.  Slam Dunk's Breach Of Contract Claim Ultimately Rests On The Same Interpretation Of The Policies That The Court Previously Rejected

#### 1.  *Slam Dunk does not allege any adjustments of the Policy Rates*

Slam Dunk's new breach of contract theory challenges Connecticut General's purported actions that, in Slam Dunk's view, "adjusted" COI rates within the five-year period preceding the filing of the initial Complaint.  Am. Compl. ¶ 62.  According to the Amended Complaint, "in the five years prior to filing this action, Defendant adjusted the COI at least once for each policy owned by Plaintiff and the putative Class members and each adjustment resulted in an increased COI charge to the policyholders."  *Id.* ¶ 6. Connecticut General allegedly breached the Policies "because it did not base [these] adjustments on its expectations as to future mortality experience."  *Id.* ¶ 49; *see also id.* ¶ 32.

A necessary premise of this theory is that Connecticut General did in fact adjust Policy Rates.  The Rate Tables show, however, that the purported "adjustments" alleged in the Amended Complaint involved no such thing.

As noted above, the only concrete allegations about any changes in Policy Rates appear in Paragraphs 35 and 36 of the Amended Complaint.  These paragraphs concern rates for individuals covered under three employers' certificates—Hyatt, Magellan Health Services, and Continental Air.  As the Rate Tables for these three certificates demonstrate, Slam Dunk's allegations about rate "adjustments" actually refer not to any adjustments in the Policy Rates, but rather to implementation, according to the insured's Attained Age, of the very COI rates in the existing Rate Tables.  The facts contained in these documents govern, and Slam Dunk's conclusory allegations to the contrary cannot suffice to state a plausible breach of contract claim.  *See Day*, 400 F.3d at 1276-78 (holding that district court properly considered contract attached to motion to dismiss, and that contents of contract trumped conclusory allegations in complaint).

For Individual Certificate No. 6134709, covered under the Hyatt certificate, the applicable Policy Rate between May 1, 2014, and April 30, 2015, when the insured had an

Attained Age of 48, was 0.498 per $1,000 of coverage.  *See* Nicholas Decl. Ex. A.  On May 1, 2015, when the insured's Attained Age was 49, the rate was 0.539.   The difference between these two existing rates accounts for the 8.2% increase alleged in Paragraph 35 of the Amended Complaint.  The other increases alleged in Paragraph 35 likewise correspond to differences in rates by Attained Age set forth in the *existing* Hyatt Rate Table:

*Figure 2: Policy Rates for Hyatt Certificate (Individual Certificate No. 6134709)*

| Attained Age | Rate | Percentage Change from Previous Attained Age |
|:---:|:---:|:---:|
| 48 | 0.498 | |
| 49 | 0.539 | 8.23% |
| 50 | 0.585 | 8.53% |
| 51 | 0.637 | 8.89% |
| 52 | 0.696 | 9.26% |

The same is true for the increases alleged in Paragraph 36 for Individual Certificate Nos. 6185028 and 6176797.  *See* Nicholas Decl. Exs. B, C.  Each rate was provided for in the *existing* Rate Table:

*Figure 3: Policy Rates for Magellan Health Services Certificate (Individual Certificate No. 6185028)*

| Attained Age | Rate | Percentage Change from Previous Attained Age |
|:---:|:---:|:---:|
| 50 | 0.554 | |
| 51 | 0.603 | 8.84% |
| 52 | 0.662 | 9.78% |
| 53 | 0.730 | 10.27% |
| 54 | 0.808 | 10.68% |
| 55 | 0.964 | 19.31% |

10

Figure 4: Policy Rates for Continental Air Certificate (Individual Certificate No. 6176797)

| Attained Age | Rate | Percentage Change from Previous Attained Age |
|---|---|---|
| 54 | 0.836 | |
| 55 | 1.274 | 52.39% |
| 56 | 1.274 | 0% |
| 57 | 1.274 | 0% |
| 58 | 1.360 | 6.75% |

As is clear, Connecticut General did not adjust the rates at issue in Slam Dunk's allegations; rather, Connecticut General implemented the rates already set forth in the existing Rate Tables.  And Connecticut General did so in precisely the way that the Certificate says it will occur.  According to the Monthly Deduction Provision of the Certificate, an insured's Monthly Deduction consists of "the Monthly Cost of Insurance Rate for Life Insurance *based on the Insured's Attained Age* and the Insured's Coverage Amount."  Certificate at 17 (emphasis added).  Of course, an insured's Attained Age increases annually and the rate for each such age is contained in the existing Rate Table.

Case law from other courts confirms that the application of predetermined age-based rates found in an existing rate table is not the sort of adjustment that triggers scrutiny under a COI provision in times when mortality expectations are alleged to be improving.  In *Yue v. Conseco Life Insurance Co.*, 2011 WL 210943 (C.D. Cal. Jan. 19, 2011), for example, the court addressed a universal life insurance policy featuring COI rates that "become larger each year as the insured ages."  *Id.* at *2.  The issue in *Yue* was not whether those existing, scheduled increases were proper; rather, the court focused on contemplated changes (and, indeed, increases) to the "COI rate scales" themselves.  *Id.* at *6-7; *see also In re Lincoln Nat'l COI Litig.*, 269 F. Supp. 3d 622, 631 (E.D. Pa. 2017) (addressing increase to the "rate schedule" rather than any preset increases in an existing schedule).

Because the only rates alleged in the Amended Complaint are the rates already found in the existing Rate Tables, the Amended Complaint fails to state any claim regarding any adjustments to Policy Rates.  There is no allegation, nor could there be, that Connecticut General changed the Rate Tables applicable to Slam Dunk.

2.      *This Court's dismissal of the initial Complaint requires dismissal of Slam Dunk's only possible theory*

Because Slam Dunk cannot rely on any actual *adjustments* in Policy Rates for its breach of contract claim, all it has left is its renewed challenge to *existing* rates—*i.e.*, the assertion that Connecticut General was obligated to *reduce* the rates found in those existing Rate Tables in light of improving mortality experience.  *See, e.g.*, Am. Compl. ¶ 3.  This Court properly rejected that obligation as contrary to the plain text of the COI Provision, under which Connecticut General "may" adjust rates from time to time but has no obligation to do so.  Certificate at 18.  Slam Dunk's Amended Complaint adds nothing on this point, and therefore fails to state a breach of contract claim.

**B.     The Policies Explicitly Permit Application Of Rates Based On Attained Age**

If Slam Dunk were to insist that even the application of existing COI Rate Tables according to Attained Age constitutes an impermissible "upward" adjustment of its COI rates, the text of the Certificate explicitly rejects any such theory of contract breach.  This is because the COI Provision of the Certificate states explicitly that Monthly COI Rates "are based on the *Insured's Attained Age*," among other factors.  Certificate at 18 (emphasis added).  This sentence thus plainly permits Connecticut General to apply predetermined Policy Rates based on "the Insured's Attained Age."  *See Swire Pac. Holdings, Inc. v. Zurich Ins. Co.*, 845 So. 2d 161, 165 (Fla. 2003) ("[I]nsurance contracts must be construed in accordance with the plain language of the policy."); *Hatadis v. Achieva Credit Union*, 159 So. 3d 256, 259 (Fla. Dist. Ct. App. 2015) ("When interpreting a contract, the court must first examine the plain language of the contract for evidence of the parties' intent." (citation omitted)).

Moreover, Slam Dunk cannot plausibly deny that age-based changes in the existing Policy Rates reflect changes in mortality expectations.  Slam Dunk itself alleges that "the Insured's Attained Age" is "tied *directly* to expectations of future mortality experience." Am. Compl. ¶ 33 (emphasis added).  It would be implausible to suggest otherwise.

**C.**     **Slam Dunk's Interpretation Of The COI Provision Is Unreasonable**

Finally, while it is unnecessary for the Court to reach these arguments given that the Amended Complaint does not actually allege any adjustments in the Policy Rates, Slam Dunk's contract claims also separately fail because the COI Provision did *not* require Connecticut General to consider *only* expectations as to future mortality when adjusting rates. Slam Dunk's assertion to the contrary is not a plausible reading of the contract for three reasons.

*First*, Slam Dunk implausibly interprets the words "based on" to mean "*solely* based on." Properly interpreted, the COI Provision only requires Connecticut General to use mortality as a "foundation" or "chief constituent" of COI rates. *See American Heritage Dictionary* 148 (4th ed. 2000) (defining "based" as "[t]o find a basis for; establish"); *id.* at 150 (defining "basis" as "[a] foundation upon which something rests" or "[t]he chief constituent; the fundamental ingredient"). Slam Dunk actually suggests this interpretation in its Amended Complaint. Am. Compl. ¶ 4 ("Alternatively, the 'based on' language requires, at a minimum, that [Connecticut General's] expectations of future mortality experience be a principal component of the COI rate."). This interpretation accords with the only federal Court of Appeals decision interpreting similar language—the Seventh Circuit's decision in *Norem v. Lincoln Benefit Life Co.*, 737 F.3d 1145 (7th Cir. 2013). As that court explained, the various definitions of "base" and its derivatives simply do not imply exclusivity; something may be based on one, principal factor but nonetheless rely on other factors as well. *Id.* at 1149-50. A Wisconsin district court, applying Florida law, adopted this same interpretation in *Maxon v. Sentry Life Insurance Co.*, 2019 WL 4540057 (W.D. Wis. Sept. 19, 2019).

*Second*, requiring Connecticut General to base its COI rates solely on mortality would be inconsistent with fundamental actuarial principles underlying life insurance policies. In essence, insurance pools risk among policyholders and distributes the collective costs of insuring against that risk. *See* 2 *New Appleman on Insurance* §§ 11.01, 11.02 (Law Library ed. 2019). The fundamental bargain of a life insurance policy is that policyholders receive protection against mortality risk in exchange for premium payments that both cover the collective costs of providing that protection and ensure reasonable profit for the insurer. *See* 1 *New Appleman on Insurance* § 1.01[1]. COI rates are one part of that fundamental bargain. The Actuarial Standards Board's Actuarial Standards of Practice ("ASOPs") show

that COI rates should be determined by "anticipated experience factors," *e.g.*, ASOP No. 2, *Nonguaranteed Charges or Benefits for Life Insurance Policies and Annuity Contracts* § 4.2(h) (rev. ed. Mar. 2013), which include more than simply mortality expectations—*e.g.*, considerations such as "investment income, mortality, policy termination, and expense rates," *id*. § 2.1. *See also* ASOP No. 24, *Compliance with the NAIC Life Insurance Illustrations Model Regulation* § 2.9 (rev. ed. Dec. 2016) (defining the "nonguaranteed element framework" as including "anticipated experience factors"); *id*. § 2.4 (defining "experience factors" to "include rates of mortality, expense, investment income, termination, and taxes"). In short, the actuarial principles underlying life insurance establish that "expectations of future mortality experience" are *one* factor assessed in calculating cost of insurance rates, but not the *only* factor. *See, e.g.*, *Norem*, 737 F.3d at 1154; *Maxon*, 2019 WL 4540057, at *2. Slam Dunk's implausible interpretation, by contrast, suggests that the cost of insurance rates need not even cover the actual cost of insurance.

*Third*, Slam Dunk's interpretation is inconsistent with fundamental regulatory principles underlying life insurance policies. Florida and other state regulators had the responsibility to review not only the policy language at issue, but the actuarial pricing underlying the Policy Rates. *See* Fla. Stat. §§ 625.121, 627.062; Fla. Admin. Code r. 69O-149.006 (describing required contents of actuarial memoranda submitted to Florida Office of Insurance Regulation); Fla. Admin. Code r. 69O-149.023 (providing for review of forms filed with Office of Insurance Regulation). That review is conducted with the understanding, consistent with the actuarial principles discussed above, that COI rates may reflect factors in addition to "expectations as to future mortality experience." The fact that Slam Dunk does not (and cannot) allege that regulators found any inconsistency between the terms of the COI Provision in the Certificate and the applicable actuarial standards confirms that Slam Dunk's interpretation of the COI Provision is implausible. *Cf. Patel v. Specialized Loan Servicing, LLC*, 904 F.3d 1314, 1321-22 (11th Cir. 2018) (explaining that filed-rate doctrine precludes challenges to insurance rates approved by regulator).

## II. Slam Dunk Fails To State A Claim For Breach Of The Implied Covenant Of Good Faith And Fair Dealing

Slam Dunk's second claim, for breach of the implied covenant of good faith and fair dealing, arises from precisely the same alleged conduct and theory as Slam Dunk's breach of

contract claim, challenging Connecticut General's conduct in allegedly "making its COI adjustments" (Am. Compl. ¶ 71)—and therefore fails for the same reasons.

"'[E]very contract contains an implied covenant of good faith and fair dealing' under Florida law." *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1329 (11th Cir. 2012) (quoting *Centurion Air Cargo, Inc. v. United Parcel Serv. Co.*, 420 F.3d 1146, 1151 (11th Cir. 2005)). But "[a] claimant asserting a cause of action for breach of the implied covenant must allege 'a failure or refusal to discharge contractual responsibilities, prompted … by a conscious and deliberate act, which unfairly frustrates the agreed common purpose and disappoints the reasonable expectations of the other party.'" *Id.* (quoting *Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Cos., Inc.*, 607 F.3d 742, 747 (11th Cir. 2010)). An implied covenant of good faith and fair dealing claim fails "where there is no accompanying action for breach of an express term of the agreement." *QBE Ins. Corp. v. Chalfonte Condo. Apartment Ass'n, Inc.*, 94 So. 3d 541, 548 (Fla. 2012).

Slam Dunk's breach of contract claim premised on purported COI adjustments fails, so its implied-covenant claim based on the same purported COI adjustments necessarily fails as well. *See QBE Ins.*, 94 So. 3d at 548; *see also Ahearn v. Mayo Clinic*, 180 So. 3d 165, 170 (Fla. Dist. Ct. App. 2015) ("Since [defendant's] individual breach of contract claim was extinguished, any claim for breach of the implied covenant of good faith and fair dealing is also extinguished.").

## CONCLUSION

For the reasons set forth above, Connecticut General respectfully requests that the Court grant this Motion and dismiss Slam Dunk's Amended Complaint with prejudice.

15

Dated: February 13, 2020          Respectfully submitted,

By: s/Shari Gerson
Shari Gerson (Florida Bar No: 17035)
GRAY ROBINSON, P.A.
401 East Las Olas Boulevard, Suite 1000
Fort Lauderdale, FL 33301
Tel: (954) 761-8111
Email: shari.gerson@gray-robinson.com

Noah A. Levine (*pro hac vice*)
Beezly J. Kiernan (*pro hac vice*)
David E. Rudin (*pro hac vice*)
WILMER CUTLER PICKERING
    HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel: (212) 230-8860
Email: noah.levine@wilmerhale.com
      beezly.kiernan@wilmerhale.com
      david.rudin@wilmerhale.com

Felicia H. Ellsworth (*pro hac vice*)
WILMER CUTLER PICKERING
    HALE AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Tel: (617) 526-6000
Email: felicia.ellsworth@wilmerhale.com

*Attorneys for Defendant Connecticut General Life
Insurance Company*

16

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on  February 13, 2020 the foregoing was filed with the Clerk of the Court using CM/ECF.  I further certify that a true and correct copy of the foregoing is being served on the following via transmission of Notices of Electronic Filing generated by CM/ECF:

| | |
|---|---|
| Edward M. Mullins, Esq.<br>R. Hugh Lumpkin, Esq.<br>Matthew B. Weaver, Esq.<br>Christina D. Olivos, Esq.<br>REED SMITH LLP<br>1001 Brickell Bay Drive, Suite 900<br>Miami, FL 33131<br>Tel: 786-747-0200, Fax: 786-747-0299<br>hlumpkin@reedsmith.com<br>nweaver@reedsmith.com<br>colivos@reedsmith.com<br>*Counsel for Plaintiff* | Douglas Rawles Esq. (*pro hac vice*)<br>Ashley Jordan, Esq.<br>Katherine J. Ellena, Esq. (*pro hac vice*)<br>REED SMITH LLP<br>355 South Grand Avenue, 28th Floor<br>Los Angeles CA 90071<br>Tel: 213-457-8000, Fax: 213-457-8080<br>rgiller@reedsmith.com<br>drawlers@reedsmith.com<br>ajordan@reedsmith.com<br>kellena@reedsmtih.com<br>*Counsel for Plaintiff* |
| Benjamin J. Widlanski, Esq.<br>Harley S. Tropin, Esq.<br>Dwayne A. Robinson, Esq.<br>Robert J. Neary, Esq.<br>KOZYAK TROPIN & THROCKMORTON LLP<br>2525 Ponce de Leon Blvd., 9th Floor<br>Miami, Florida 33134<br>Tel: 305-372-1800, Fax: 305-372-3508<br>bwidlanski@kttlaw.com<br>hst@kttlaw.com<br>drobinson@kttlaw.com<br>rn@kttlaw.com<br>*Co-Counsel for Plaintiff and proposed Class* | |

s/  Shari Gerson
SHARI GERSON, FL Bar No.  17035
Gray Robinson, P.A.
401 East Las Olas Boulevard, Suite 1000
Fort Lauderdale, Florida  33301
Telephone:  954-761-8111
Email:  shari.gerson@gray-robinson.com

*Attorneys for Defendant Connecticut General
Life Insurance Company*

/827506/195#39426310 v1

17