**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 1:19-cv-21996-COOKE/GOODMAN**

| | |
|---|---|
| SLAM DUNK I, LLC, on behalf of itself and all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) |
| CONNECTICUT GENERAL LIFE INSURANCE COMPANY, | ) ) ) |
| Defendant. | ) ) ) |

**Plaintiff Slam Dunk I, LLC's Opposition to Motion to Dismiss**

## I.  INTRODUCTION

The Motion to Dismiss (ECF No. 72) by Connecticut General Life Insurance Company ("Defendant") relies on unsupported and unexplained evidence from outside the Amended and Supplemental Complaint ("Amended Complaint") (ECF No. 69) and the contracts at issue.  Without providing any documents, depositions, or interrogatories, Defendant now asks this Court to dismiss the Amended Complaint on facts beyond its four corners.  Removing Defendant's arguments based on that evidence (as this Court should), leaves only cursory and insufficient support for its Motion to Dismiss ("Motion").  For that reason alone, the motion should be denied.

The insurance policies at issue in this case are group universal life policies—life insurance policies made available to mid-level employees at large corporations, such as Hyatt, Continental, SunTrust, and others; many of these employees reside in South Florida.  The corporations do not pay for the policies; employees purchase and sustain them through payment or payroll deductions.  These policyholders have made the conscious choice to include life insurance policies with a cash-value component as part of their long-term investment portfolio.

The most important provision in the contractual document creating these policies, and the provision at issue in this case, is the requirement that the Defendant base monthly cost of insurance ("COI") adjustments on its expectations as to future mortality.  Am. Compl. ¶ 2.  And, despite the uncontested allegations in the Amended Complaint that life expectancy has been rising as Defendant's expectations as to future mortality have been falling, the insurance rates of the subject policies—specifically the COI rates—have gone up.  As a result, Defendant has been reaping enormous profits, as identified in their yearly financial reports.  *Id.*  ¶ 47.  By avoiding its contractual obligations, Connecticut General has engineered a situation where it cannot lose money on these policies, while the policyholders are left without recourse.

In its initial complaint, Plaintiff alleged that Defendant's obligation to base the COI on its expectations as to future mortality created a revolving and sustained obligation on Defendant to reexamine the rates and adjust those rates downward when it knew that mortality experiences were improving.  This Court dismissed Plaintiff's claims without prejudice, concluding that the contractual language gave Defendant discretion whether to make adjustments.  While not waiving that portion of its claim, Plaintiff includes new

allegations in the Amended Complaint: specifically, Plaintiff alleges that Defendant has adjusted (i.e., increased) the COI for Plaintiff and the class members, and in so doing, violated Defendant's obligations under the subject policies.  Defendant's decision to increase COI rates—in certain cases by as much as 50% year-over-year—violates the policies' requirements that COI rates be determined based on mortality experience, which Defendant does not contest is decreasing dramatically, and has been doing so for the life of the policies.

To support its Motion, Defendant must rely on factual allegations that appear nowhere in the contract or the Amended Complaint.  Defendant argues that changes in COI are the product of rate tables appended to the Declaration of Anne Marie Nicholas in support of its Motion (the "Rate Tables"), and as such, the increases in the COI supposedly are not increases at all but merely the result of the application of a "predetermined" schedule. Tellingly, Defendant repeatedly refers to these as "contractual Rate Tables" in an attempt to imply that the Rate Tables are part of the policies, and in existence at the time the policyholders signed the contracts.  In fact, the Rate Tables were and are *not* part of the contracts at issue—in fact, these Tables did not exist until 2009, by which point many of the policies at issue had been active for years.  Nor does Defendant provide any explanation as to how the numbers comprising the Rate Tables were calculated.  In other words, Defendant is not even facially asserting that the Rate Tables were created based on Defendant's expectations as to future mortality (which is the obligation Defendant undertook by drafting the policies).  The one thing that can be gleaned from the extra-contractual, unsupported Rate Tables Defendant injects into its Motion is that the monthly cost of insurance rates actually do increase over time, and never decrease, for anyone, despite continually improving mortality.

This Court should deny Defendant's Motion for multiple reasons.  First, its reliance on the extra-contractual Rate Tables is improper.  The Rate Tables are not central to Plaintiff's breach of contract claim, are not described or contemplated in the Amended Complaint, and are not part of the original contracts at issue in this matter.  Additionally, the Rate Tables have not been subject to examination by Plaintiff; Defendant has offered them, without support or underlying data, to claim that the COI rate increases they admit occurred were simply the implementation of a previously crafted policy.  Of course, Defendant provides no evidence as to what factors it considered when creating the tables, and the veracity of these

- 2 -

documents has not been established through any discovery process, let alone the rigorous discovery contemplated by the Federal Rules. Plaintiff has alleged a breach of contract claim by pleading that the parties entered into a valid contract that Defendant breached, and the class members have suffered harm as a result thereof. Defendant's principal arguments in response are to add testimony to the record and point at the Rate Tables. That is insufficient.

Additionally, Plaintiff states a claim for a breach of the implied covenant of good faith and fair dealing. Florida law recognizes that a party may be liable for exercising a discretionary contractual obligation where it fails to do so in good faith. Despite Defendant's arguments, such a claim does not rise or fall with Plaintiff's claim for breach of contract; it addresses a separate and distinct breach of contract by Defendant.

Ultimately, because Plaintiff's Amended Complaint adequately sets forth causes of action for breach of contract and for breach of the implied covenant of good faith and fair dealing, and because Defendant's arguments in support of its Motion are almost entirely fact-dependent and outside the contract as well as the four corners of the Amended Complaint, the Motion should be denied.

## II.   RELEVANT FACTUAL BACKGROUND

This is a class action brought against Defendant on behalf of Slam Dunk and all policyholders whose monthly COI rates have been increased at least once since May 16, 2014. Am. Compl. ¶ 1. Plaintiff owns twenty-two group universal life insurance policies issued to employees of such companies as SunTrust Bank, Hyatt, and Continental Airlines. *Id.* ¶ 9. The life insurance is permanent, even if the employee leaves her job, but the policyholder must pay monthly COI to maintain the coverage. *Id.* ¶¶ 21-22.

Defendant's insurance contracts promised to base the COI on "expectations of future mortality experience," Defendant considers whether to adjust the COI annually and, for some policyholders, Defendant increased the COI on an annual basis. Other policyholders had their COI adjusted less frequently—but all policyholders experienced an increase in the COI despite the improved mortality experience. *Id.* ¶ 6.

Each of the insurance policies at issue here contains the following language about how and when Defendant will calculate the COI charge:

> The Monthly Cost of Insurance Rates are based on the Insured's Attained Age, the type of benefit, the Class of Insured and whether premiums for that Insured are paid directly to CG or through payroll deductions. **The Monthly Cost of**

> **Insurance Rates are determined by CG based on its expectations as to future mortality experience.** Adjustments in the Monthly Cost of Insurance Rates may be made by CG from time to time, but not more than once a year, and will apply to Insureds of the same class.

Am. Compl. ¶ 29 & Ex. A at p. 18 (emphasis added).  The insurance policies are all form policies that are preprinted, and insureds are not permitted to negotiate different terms.  *Id.* ¶ 31. The COI provision requires that COI rates "*are determined*" based on Defendant's expectations as to future mortality experience.  *Id.* (emphasis added).  Thus, as future mortality experiences improve or decline, the terms of the policies obligate Defendant to review its COI rates to ensure that the rates still align with its expectations as to future mortality experience.  *Id.*  ¶ 32.  The policies contain a "Table of Guaranteed Maximum Monthly Life Insurance Rates" that sets forth the cap or limit on what Defendant can charge policyholders for COI for the coverage.  Am. Compl., Ex. A, pp. 31, 34 and 35.  The policies do not contain a table that provides how much Defendant will charge policyholders based on the policyholder's attained age, nor do they contain a previously calculated schedule of future adjustments.

As alleged in the Amended Complaint, according to reports published by the Society of Actuaries, mortality rates have been improving steadily each year (including as recently as 2015, 2018, and 2019) since the insurance contracts at issue were sold.  Similarly, Defendant's parent company, CIGNA, stated in public filings that it was experiencing better than expected results on mortality experience. Am. Compl. ¶ 47.  Based on this data, rather than increasing COI for policyholders, Defendant should have decreased its COI rates.  Instead, it adjusted COI rates upward, charging Plaintiff and the class higher, not lower, COI rates.  *Id.* ¶¶ 35-38, 43-46. Defendant's failure to reconcile its COI rates with its actual expectations as to future mortality experience has led to unprecedented increases in Defendant's profitability, as acknowledged in Defendant's parent corporation's public corporate filings. *Id.* ¶¶ 38, 47.

## III.   <u>LEGAL ARGUMENT</u>

### A.   **Legal Standard**

A Rule 12 (b)(6) motion is designed to "test[ ] the sufficiency of the complaint" and not "whether a plaintiff will ultimately prevail on the merits." *Restrepo v. Wells Fargo Bank, N.A.*, No. 09-22436-CIV, 2010 WL 374771, at *1 (S.D. Fla. Feb. 3, 2010).  To defeat a motion

to dismiss, the plaintiff need show only that its complaint contains factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff is required only to plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 570). A claim has "facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  When analyzing a complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), all factual allegations are taken as true and construed in the light most favorable to the plaintiff. *Butler v. Sheriff of Palm Beach Cty.*, 685 F.3d 1261, 1265 (11th Cir. 2012).  "And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'"  *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 4165 U.S. 232, 236 (1974)).  Rather than assert that the Amended Complaint fails to allege a plausible claim, Connecticut General relies on evidence outside the pleading to show that it should not be liable.

**B.   Defendant's Reliance on Extra-Contractual "Rate Tables" in Its Motion Is Improper and Mandates Denial of Its Motion.**

Defendant's Motion relies principally on three Rate Tables that are not part of the insurance contracts nor referenced in the Amended Complaint, stating several times that the Rate Tables show that Defendant did not "in fact" adjust its COI rates. *See* Mot. at 1, 4, 5, 6, 7, 9, 11. According to Defendant, the Rate Tables indicate that it did not adjust any COI rates, but merely "implemented" or "applied" the "preexisting" COI rates contained in those tables. *See, e.g.*, *id.* at 11 (Defendant "did not adjust the rates at issue in Slam Dunk's allegations; rather, [Defendant] implemented the rates already set forth in the Rate Tables.").

But Defendant's reliance on the Rate Tables is improper and, when taken out of consideration (as they must be), Defendant's arguments collapse like a house of cards.  The Rate Tables are neither central to Plaintiff's claims nor are they part of the policies themselves; further, their authenticity and admissibility is disputed.  *See infra* Part III.B.2. And, even if it were proper for the Court to consider the Rate Tables, Defendant cannot show that their

- 5 -

existence allows Defendant to violate the plain language of the insurance policies that form the basis of the claims of Plaintiff and the class.  *See infra* Part III.C.

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), a district court "ordinarily may not look beyond the pleadings." *Crawford's Auto Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.*, 945 F.3d 1150, 1162 (11th Cir. 2019). A district court may consider an extrinsic document attached to a motion to dismiss if—and only if—the document is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged. *SFM Holdings, Ltd. v. Banc of Am. Secs., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010). The Rate Tables satisfy neither requirement.

### 1. *The Rate Tables are not central to Plaintiff's breach of contract claim.*

A document is considered central to a plaintiff's claim "if the document's contents are alleged in [the] complaint." *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). Or, stated differently, the document forms "a necessary part of [plaintiff's] effort to make out a claim." *Id.* As an initial matter, the contents of the Rate Tables are not alleged in Plaintiff's Amended Complaint. To get around this obstacle, Defendant asserts that the insurance policies "explicitly refer[] to the Monthly COI Rates described in the Rate Tables," thus making the Rate Tables "part of the Policies themselves."[1] Mot. at 5 n.2.

Defendant's assertion is demonstrably false:  the insurance policies do not attach, incorporate by reference, or even mention the Rate Tables.  The burden is on Defendant to demonstrate the Rate Tables are part of the policy and it has failed to meet that burden.  As noted above, the policies include only one rate table and that is the one that sets the rate

---

[1] For instance, Defendant states that the "Certificate explicitly refers to the Monthly COI Rates described in the Rate Tables…. The COI Rates, as listed in the Rate Tables, are thus part of the Policies themselves." Mot. at 5 n2. Pages 17 and 18 of the policy refer to monthly COI rates, but they do <u>not</u> refer to the Rate Tables. Am. Compl., Ex. A at 17-18.  The only table referenced is the "Table of Guaranteed Maximum Insurance Rates," which sets a ceiling for COI rate charges.  ("Under no circumstance will the Monthly Cost of Insurance Rates for Life Insurance ever be greater than those shown in the Table of Guaranteed Maximum Life Insurance Rates. Such guaranteed maximum rates are based on the Commissioners 1980 Extended Term Table (age last birthday) and 4% effective annual interest.")  *Id.*  Defendant thus has not pointed to any part of the contract that incorporates or references the Rate Tables.  Accordingly, the contract no more incorporates the Rate Tables than it incorporates an e-mail that (just as the Rate Tables) may reflect monthly COI rates charged in the future.

"above which" Defendant cannot go in terms of setting COI.[2]  *See supra*, p. 4; p. 6, n.1. The Court should not consider the Rate Tables offered by Defendant in deciding this Motion.

    **2.    *The Rate Tables are disputed.***

    In addition to not being a part of the contracts at issue or a central component of Plaintiff's claims, the Court should not consider the Rate Tables for evidentiary reasons.  First, Defendant has failed to support the authenticity of the documents.  Defendant infers but does not support that the Rates Tables are internal business records and the declaration the Defendant filed is facially deficient. The declarant, Anne Marie Nicholas, does not state that she bases her declaration on her personal knowledge. She states only that she is "familiar with the facts and circumstances set forth in th[e] declaration." Decl. of Anne Marie Nicholas ¶ 2 (ECF No. 72-1) (the "Nicholas Declaration"). Given that such a declaration would be inadmissible at the summary judgment stage, *see* Fed. R. Civ. P. 56(c)(4), it makes even less sense to permit its consideration along with a Rule 12(b)(6) motion. It therefore would be manifestly unfair to Plaintiff to permit the consideration of Ms. Nicholas's facially insufficient declaration. *See Davis v. Howard*, 561 F.2d 565, 571–72 (5th Cir. 1977) (*per curiam*) ("Where there is a motion to dismiss for failure to state a claim upon which relief may be granted, there can never be a wide overview by the trial court, beyond the pleadings to include matters outside, without affording all litigants the opportunity to offer their perspectives on the additional matter by way of admissible evidence.").[3]

    Likewise, the declarant fails to establish the admissibility of any of the Rate Tables. Indeed, the Rate Tables—whose contents are not consistent from chart to chart—raise factual questions about how Defendant generated the figures that appear in them.  Did Defendant increase COI rates based solely on expectations of future mortality?  Alternatively, were the rate increases based principally on Defendant's expectations of future mortality? What factors did Defendant consider when it calculated massive increases in premiums some years but not others, for policyholders of some employers but not others?  The answers to these (and other)

---

[2] Many of the subject policies at issue were sold decades before these 2009 charts were even in existence.
[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the United States Court of Appeals for the Fifth Circuit, as that court existed on September 30, 1981, handed down prior to close of business on that date.

questions about the Rate Tables must (and can only be) answered through discovery—and the answers to those questions will bear on the merits of Plaintiff's claims.  These questions cannot be resolved here, in the context of this motion.

Nor can the Court properly take judicial notice of the Rate Tables. Indeed, Defendant did not ask the Court to take judicial notice of the Rate Tables, and for good reason: the Rate Tables are not susceptible to judicial notice. Defendant has provided no indication that the Court—or Plaintiff—can readily and accurately discern the authenticity of the Rate Tables. *See Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999) ("Fed. R. Evid. 201(b) provides for taking judicial notice of facts that are not subject to reasonable dispute because they are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.").

Plaintiff thus disputes the authenticity and admissibility of the Rate Tables, and for this reason as well, this Court cannot properly consider the Rate Tables. *See AML Invs. IX LLC v. Kennedy*, No. 18-22896-CIV, 2019 WL 2107291, at *4 (S.D. Fla. Apr. 24, 2019) (citing *Day v. Taylor* but refusing to consider at the motion to dismiss stage documents that the plaintiff disputed).

3. ***It Is Reversible Error to Consider the Rate Tables at This Time.***

Because the Rate Tables impermissibly go beyond the four corners of the Amended Complaint (and no exception exists to consider them now), this Court should not consider them. *See Kennedy*, 2019 WL 2107291, at *4. Defendant deceptively refers to the Rate Tables as "contractual Rate Tables" numerous times throughout its Motion to Dismiss; thus implying that these Rate Tables are part of the contract. They are not. This attempt to implicate evidence beyond the allegations, if considered at this stage, would constitute reversible error.  *See, e.g., Herron v. Herron*, 255 F.2d 589, 590 (5th Cir. 1958) (holding that it was reversible error for the trial court to consider matters outside the pleading to establish a statute of limitations defense); *see also Real Estate Indus. Sols., LLC v. Concepts in Data Mgmt. U.S., Inc.*, No. 6:10-cv-1045, 2011 WL 13141044, at *5 (M.D. Fla. Oct. 4, 2011) (refusing to accept an argument at the Rule 12 stage that was "predicated on documents, attached to the Motion as Exhibit A, that [were] not part of the pleadings").

C.      **Plaintiff Has Alleged a Claim for Breach of Contract.**

"Under Florida law, there are three elements to a breach of contract claim: (1) the existence of a contract; (2) a material breach; and (3) damages resulting from the breach." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009); *Deauville Hotel Mgmt., LLC v. Ward*, 219 So. 3d 949, 953 (Fla. 3d DCA 2017).

Plaintiff has alleged a *prima facie* claim for breach of contract against Defendant: (1) it is undisputed that the parties have entered into a valid contract; (2) as discussed in further detail below, Defendant materially breached its obligation to determine its COI rates "based on its expectations of future mortality experience"; and (3) Plaintiff and the class members have suffered economic harm by the unwarranted increase in COI rates.  The only issue the Motion presents is whether Plaintiff has adequately plead a material breach of the contract.

   1.      *Plaintiff Has Alleged a Material Breach of the Policies.*

Although Defendant contends that the Amended Complaint fails to state a plausible claim for breach of contract, Plaintiff's allegations establish otherwise.  The policies provide in part:

> The Monthly Cost of Insurance Rates are based on the Insured's Attained Age, the type of benefit, the Class of Insured and whether premiums for that Insured are paid directly to CG or through payroll deductions. **The Monthly Cost of Insurance Rates are determined by [Defendant] based on its expectations as to future mortality experience.**

Am. Compl. ¶ 29 & Ex. A at 18 (emphasis added).   The instant policies thus provide that Defendant must determine the monthly COI rates for categories of insured individuals based on Defendant's expectation as to future mortality experience. The insurance industry utilizes mortality tables to ascertain mortality experience.  Am Compl. ¶¶ 29, 39. Mortality tables are charts showing the rate of death at a certain age for respective groups of individuals, such men versus women or smokers versus non-smokers.  *Id.* ¶ 39.

Plaintiff alleges in its Amended Complaint that mortality experience has improved across the board and substantially through all mortality tables, meaning that all groups of individuals are living longer. Am. Compl. ¶ 45. Yet the rates Defendant charges the current and former employees of numerous South Florida employers, and many other class members, continue to increase year after year, despite that the costs to payout death benefits is decreasing because individuals are living longer. *Id.* ¶ 3. Mortality experience is the most

significant factor that affects monthly COI rates because, as alleged in the Amended Complaint, age attained and the other enumerated factors designated in the policies "are not material to determining the Monthly Cost of Insurance." *Id.* ¶ 33.

At bottom, the Amended Complaint alleges that Defendant breached these policies by:

> (a) Increasing COI charges when it adjusted[4] the amount to be charged to the policyholders because its expectations of future mortality experience did not support an increase in the COI;
>
> (b) Taking factors other than its expectations of future mortality experience into account when determining the amount of COI to charge when it adjusted the amount charged on the policies or, alternatively, not relying principally on its expectations of future mortality experience, or, alternatively, not considering those expectations at all;
>
> (c) Improperly reducing the Cash Value of policyholder cash accounts by deducting COI amount that were calculated in violation of the terms of the policies; and
>
> (d) Failing to reduce the COI charges when it adjusted the amount to be charged to the policyholders because Defendant's expectations of future mortality experience supported a decrease in the COI.

*Id.* ¶ 62.

### 2. *Plaintiff Adequately Alleges that Defendant Breached the Contract by Not Basing COI Rates Exclusively—or Principally—on Mortality Experience.*

Defendant moves to dismiss, in part, because it contends that contrary to the explicit terms of the contract, Defendant could consider multiple factors in setting COI rates (including those not designated in the contract). Defendant suggests that that it was permitted

---

[4] Defendant contends that its year-to-year rate increases, purportedly based on the Rate Tables, are not "[a]djustments" as that term appears in the policy. At the motion to dismiss stage, this argument fails. In the absence of a definition of the term "adjustment" in the policy, and in the presence of different interpretations, Florida law requires that this Court construe the term "adjustment" in favor of Plaintiff. *Evanston Ins.*, 145 F. Supp. 3d at 1147 (holding that insurance policies "are to be construed most strongly against the insurer and liberally in favor of the insured"). For purposes of ruling on the Motion, the Court should construe "adjustment" to mean the point at which the monthly COI rates were actually adjusted (i.e., increased) for a policyholder, not the date in which the Defendant had adopted a future plan to possibly adjust the rates upward.

to consider the Insured's Attained Age along with a host of "other factors" not provided for in the policies, such as "investment income, mortality, policy termination, and expense rates." Mot. at 12-14. Therefore, Defendant argues that it has not breached the contract by failing to base its monthly COI rates on mortality experience.

Defendant also argues that "Florida and other state regulators" reviewed the policies and, without providing any support, claims that the review was "consistent with actuarial principles." Mot. at 14. The latter unsupported assertion is a clear indication that Defendant's argument is meritless;[5] the former contention runs afoul of Florida law. Under the rules of contractual interpretation, Defendant is wrong on both counts.

It is undisputed that insurance "policy language is to be interpreted according to its 'everyday meaning' as it is 'understandable to the layperson.'" *Ohio Cas. Ins. Co. v. Cont'l Cas. Co.*, 279 F. Supp. 2d 1281, 1283 (S.D. Fla. 2003) (quoting *Hrynkiw v. Allstate Floridian Ins. Co.*, 844 So. 2d 739, 741 (Fla. 5th DCA 2003)). "It is well settled that the actual language used in the contract is the best evidence of the intent of the parties and, thus, the plain meaning of the language controls." *Rose v. M/V "GULF STREAM FALCON"*, 186 F.3d 1345, 1350 (11th Cir. 1999); *see In re Gardinier, Inc.*, 831 F.2d 974, 976 (11th Cir. 1987) ("[A]bsent ambiguity in the terms of a contract, intent is gleaned from the four corners of the instrument.").

To the extent there is any ambiguity, the court must construe such an ambiguity in favor of the insured. *See Natarajan v. Paul Revere Life Ins. Co.*, 720 F. Supp. 2d 1321, 1326–27 (M.D. Fla. 2010) ("In the State of Florida, all ambiguities in insurance contracts are construed in favor of the insured." (citing *Deni Assocs. v. State Farm Fire & Cas. Ins. Co.*, 711 So.2d 1135, 1140 (Fla. 1998))). Similarly, "insurance contracts are to be construed most strongly against the insurer and liberally in favor of the insured." *Evanston Ins. Co. v. Budget Grp. Inc.*, 199 F. App'x 867, 868 (11th Cir. 2006) (*per curiam); see Berkshire Life Ins. Co. v. Adelberg*, 698 So. 2d

---

[5] This Court should not consider Defendant's arguments regarding "actuarial principles" that were allegedly approved by "Florida and other state regulators." *See* Mot. at 14. Defendant again raises issues outside the pleadings, arguing the merits of the case on facts that are yet to be established. *See Herron*, 255 F.2d at 590. Nor did Defendant request the Court take judicial notice of any "actuarial principles," which are not referenced in the Amended Complaint nor attached to its Motion.

828, 830 (Fla. 1997) (insurance policy to be construed "'liberally in favor of the insured and strictly against the insurer'").

Contracts that specifically reference certain items also are presumed to exclude any items that are not mentioned. *See Am. Univ. of the Carribbean, N.V. v. Caritas Healthcare, Inc.*, 441 F. App'x 644, 646 (11th Cir. 2011) (*per curiam*) ("Florida law recognizes the 'doctrine of *expression unius est exclusion alterius*,' which 'instructs that when certain matters are mentioned in a contract, other similar matters not mentioned were intended to be excluded" (quoting *In re Celotex Corp.*, 487 F.3d 1320, 1334 (11th Cir. 2007))).

Defendant all but admits in its Motion that it is basing monthly COI rates on factors other than mortality experience, including factors not specified in the insurance contracts. *See, e.g.*, Mot. at 14. Interpreting the contract as permitting factors other than those specified by the policy[6] in calculating the COI is inconsistent with Florida law. *See Am. Univ. of the Caribbean*, 441 F. App'x at 646 (mentioning certain matters in a contract express an intent to exclude other items not mentioned).

Florida law mandates that the insurance policy in this respect be liberally construed against Defendant. *See Berkshire Life Ins.*, 698 So. 2d at 830. Not only must any ambiguity be construed in favor of Plaintiff, *see Natarajan*, 720 F. Supp. 2d at 1326–27, but the presence of an ambiguity requires denial of a motion to dismiss, *see Fleisher v. Phoenix Life Ins. Co.*, 18 F. Supp. 3d 456, 470-71 (S.D.N.Y. 2014) (holding that "[a]mbiguity alone compels" rejection of insurer interpretation of "'based on' since there is no conceivable argument that [plaintiff's] reading is 'unreasonable,' or that [defendant's] is the only fair interpretation of the contract language"). At this stage, Plaintiff has said enough to plausibly allege that Defendant is breaching the policies by not basing the COI exclusively or principally on mortality experience.

Numerous courts in other districts analyzing similar insurance policies have also determined that similar "based on" language connotes exclusivity. *See Jeanes v. Allied Life Ins. Co.*, 168 F. Supp. 2d 958, 974 (S.D. Iowa 2001), *aff'd in part & rev'd in part on other grounds*, 300 F.3d 938 (8th Cir. 2002) (Holding that in dispute addressing a nearly identical provision, the provision was unambiguous and that "the plain language of the contract only allows

---

[6] To the extent that, as this Court pointed out during the hearing on the first Motion to Dismiss, "may means may," then surely "based on" means based on.

[defendant] to change the cost of insurance for increases in the companies [sic] expectations as to future mortality.'"); *Yue v. Conseco Life Ins. Co. (Yue I)*, No. CV 08-1506, 2011 WL 210943, at *9 (C.D. Cal. Jan. 19, 2011) (holding that under similar provision to one at issue here, it was "impermissible" for defendant to "take[] into account factors other than 'mortality'").[7]

Defendant relies on *Norem v. Lincoln Benefit Life Co.,* 737 F.3d 1145 (7th Cir. 2013), for the proposition that the phrase "based on" somehow does not suggest exclusivity. Mot. at 13-14. That assertion is irrelevant. As Defendant acknowledges, Plaintiff alleges (alternatively) that mortality rates had to at least be the primary factor in setting COI rates—and they were not. *See* Am. Compl. ¶¶ 58, 62(d). *Norem* thus does not determine as a matter of law the validity of Plaintiff's allegations.

Regardless, multiple federal courts interpreting similar COI provisions have squarely rejected the Seventh Circuit's analysis in *Norem*. In *Fleisher v. Phoenix Life Insurance Co.*, the court noted that "the Seventh Circuit has unnecessarily complicated a simple issue" [because] "the phrase 'based on' is commonly understood to mean that something is created in reliance on identified factors." 18 F. Supp. 3d at 472-73. There, in the absence of phrases like "including but not limited to" or "such as," the court concluded that it could not "fathom a scenario in which a New York court would construe the phrase 'based on' as *precluding* an average insured individual from understanding the phrase to be exhaustive." *Id.* at 473 (emphasis in original). A district court in California likewise held that a COI provision requiring rates to be "based on" "expectation[s] as to future mortality experience" could not be based on undisclosed factors not stated in the policy. *See Yue I*, 2011 WL 210943, at *9-10.

*Norem* is also inapplicable to the present case. The COI provision in the *Norem* stated that the COI "'is based on the insured's sex, issue age, policy year, and payment class.'" 737

---

[7] *See also Vogt v. State Farm Life Ins. Co.*, No. 2:16-cv-04170, 2018 WL 1747336, at *4 (W.D. Mo. Apr. 10, 2018) ("Given the COI language . . . no reasonable lay person would expect that State Farm was permitted to use any factor it wanted to calculate the cost of insurance"); *Yue v. Conseco Life Ins. Co. (Yue II)*, 282 F.R.D. 469, 481 (C.D. Cal. 2012) ("The COI provision states that the COI Rate will be 'based on' projected rates of mortality. Defendant appears to argue that the COI Rate can be considered 'based on' expected mortality rates long as expected mortality rates constitute one factor in determining the COI Rates. Defendant's interpretation conflicts, however, with the ordinary and popular meaning of the phrase 'based on.'").

F.3d at 1147. *Norem* itself declined to consider authorities that limited the factors in setting COI rates to morality experience. *Id.* (discussing *Yue II* and other authorities). *Norem* explicitly rejected those cases because the policy at issue in *Norem* "says nothing about 'mortality experience' as the basis for the COI rate." 737 F.3d at 1154. The Plaintiff's policies here, however, do say something about "mortality experience." Explicitly, they say that the COI will be "based on" "mortality experience." Am. Compl. ¶ 29 & Ex. A at 18. *Norem* is thus not persuasive for that additional reason.[8]

**3.  At Best, Defendant Raises Issues Contesting Plaintiff's Interpretation of the Contract that Present Factual Disputes Incapable of Resolution at the Motion to Dismiss Stage.**

Defendant also moves to dismiss because, in its view, basing COI rates "solely on mortality would be inconsistent with fundamental actuarial principles underlying life insurance policies." Mot. at 13-14. Defendant raises this and other contentions in support of dismissal that implicate factual questions that cannot be resolved in Defendant's favor at the motion to dismiss stage.

Defendant implicitly argues that this Court should consider the custom in the insurance industry in interpreting the insurance policies. *See, e.g.*, *id.* at 13 (arguing that Plaintiff's interpretation "would be inconsistent with fundamental actuarial principles underlying life insurance policies"). Ordinarily, "[c]ommercial transactions and contracts should be interpreted in light of custom or trade usage." *Nat'l Merchandise Co., Inc. v. United Serv. Auto. Ass'n*, 400 So. 2d 526, 531 (Fla. 1st DCA 1981). Establishing that industry custom or usage here would require admittance of extrinsic evidence, especially because such custom or usage is outside the pleadings. *See Lincoln Adventures, L.L.C. v. Certain Underwriters at Lloyds of London*, No. 05-60554-CIV, 2005 WL 8156387, at *2 (S.D. Fla. Dec. 15, 2005) (discussing circumstances "where interpreting a contract involves questions of fact," such as ascertaining custom or usage to construe ambiguous terms).

---

[8] Defendant further contends that it complied with the policies in the limitations period because the upward adjustments in monthly COI rates were based on age attained. Motion at 6-8. That assertion is outside the pleadings. Further, construing the policies as permitting age attained as the sole basis to adjust monthly COI rates ignores the immediately preceding sentence requiring COI rates to be "determined by" expectant mortality experience, a construction that is inconsistent with Florida law. *See Veniard v. NB Holdings Corp.*, No. 3:98-CV-446-J-21A, 2000 WL 33988085, at *8 (M.D. Fla. Aug. 8, 2000) (stating that a court must "avoid constructions which render a clause of the contract superfluous or without meaning.").

Ultimately, to prevail at this stage of the proceedings, the Defendant must establish that its interpretation is the <u>only</u> reasonable construction of the policy.  *See, e.g.*, *Campaniello v. Amici P'ship*, 832 So. 2d 870, 872 (Fla. 4th DCA 2002) ("[W]hen the terms of a written instrument are disputed and rationally susceptible to more than one construction, an issue of fact is presented which cannot properly be resolved by summary judgment.").  Florida jurisprudence is clear that to construe disputed provisions in light of parties' differing constructions of a policy requires the Court "to delve into questions of intent and credibility, which are improper inquiries at the summary judgment stage"—much less the motion to dismiss stage. *See Onuss Ortak Nokta Uluslararasi Haberlesme Sistem Servis Bilgisayar Yazilim Danismanlik Ve Dis Ticaret Limited Sirketi v. Terminal Exch., LLC*, No. 09-80720-CIV, 2010 WL 5393488, at *7 (S.D. Fla. Dec. 21, 2010).  For this additional reason, the Court should deny the Motion to Dismiss and allow the parties to develop the factual record as to the proper interpretation of the insurance policies at issue here.

### 4. *This Court Should Reconsider Its Prior Ruling Because an Alternative Ground to Uphold the Amended Complaint Exists.*

While the Amended Complaint does state a claim for relief not alleged in the initial pleading, this Court should also not bar Plaintiff from establishing that Defendant breached Plaintiff's policies and the policies of absent class members to the extent Defendant failed to adjust COI rates downwards in the face of improving mortality experience.  This Court concluded that the policy's language that "[a]djustments in the Monthly Cost of Insurance Rates *may be made* by [Connecticut General] based on its expectations as to future mortality" was permissive as evidenced by the use of the word "may." Am. Compl., Ex. A at 18 (emphasis added); Dec. 19, 2019 Hr'g Tr at 18:9-14.  Accordingly, this Court concluded that Defendant could not have breached the agreement by failing to perform a discretionary act.

The Court's conclusion is not unreasonable—if not for other language in the policy, specifically, within that very same provision.  Florida law instructs that courts are to "'read provisions of a contract harmoniously in order to give effect to all portions thereof." *City of Homestead v. Johnson*, 760 So. 2d 80, 84 (Fla. 2000). Indeed, the third sentence within that provision says that Defendant "may" "[a]djust[] the COI rates. Am. Compl. ¶ 29 & Ex. A. at 18. The preceding sentence, however, also requires that the COI rates be "determined by [Defendant] based on its expectations as to future mortality rates." *Id.* Construing "may" to

be permissive in all circumstances would render the prior sentence in that provision superfluous because in the event Defendant never makes any adjustments after the initial COI charge, COI rates would never be determined "based on" "expectations as to future mortality experience." This construction is not permissible under Florida law. *See Veniard*, 2000 WL 33988085, at *8 (stating that a court must "avoid constructions which render a clause of the contract superfluous or without meaning").

A district court in the Eleventh Circuit recently decided a similar issue in a case that is instructive. In *Advance Trust & Life Escrow Services, LTA v. Protective Life Insurance Co.*, No. 2:18-CV-1290, 2019 WL 4572809, at *5–6 (N.D. Ala. Sept. 20, 2019), the Court denied a life insurer's motion for judgment on the pleadings when the plaintiff sufficiently alleged that the insurer had an obligation to periodically review the COI rates to conform with the insurer's projected mortality costs but that the insurer breached the policy terms by not basing its COI rates on future mortality experience. Just as in present case, the policy provided that "'[m]onthly cost of insurance rates *will be determined* by [the insurer], based on [its] expectations as to future mortality experience.'" *Id.* at *1 (boldface and second alteration added). The Court denied the Rule 12 motion, stating that "at the motion to dismiss stage the court simply notes that the language 'will be determined' at least plausibly obligates [the insurer] to periodically update its COI rates. Specifically, the court notes that the policies' use of the phrase '*will* be determined,' as opposed to '*may* be determined,' plausibly indicates an ongoing duty to ensure the COI rates reflect current data." *Id.* at *5 (emphasis in original). *Advance Trust* thus held that the plaintiff's allegations were appropriate for discovery. *Id.* at *7; *see also Vogt,* 2018 WL 1747336, at *2 (denying life insurer's motion for summary judgment when discovery showed that "[t]he COI rates were not equal to the mortality rates in [the insurer's] proprietary mortality tables."). This Court thus should not preclude Plaintiff from pursuing all viable bases for relief and deny the Defendant's Motion.

## D.   Plaintiff States a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing.

Defendant cursorily contends that Plaintiff's claim for breach of the implied covenant of good faith and fair dealing rises and falls with Plaintiff's breach of contract claim. This argument has no merit, primarily because Plaintiff has sufficiently alleged a claim for breach

of contract. *See supra* Part III.C. But, in any event, Defendant misapprehends the law and misstates Plaintiff's claim.

In *Abels v. JPMorgan Chase Bank, N.A.*, 678 F. Supp. 2d 1273 (S.D. Fla. 2009), the court rejected the very argument Defendant raises here. *Abels* explained:

> Defendant argues that Plaintiffs cannot maintain an action for breach of the implied covenant of good faith and fair dealing because Plaintiffs have not alleged a breach of a specific term of the contract.
>
> … Plaintiffs argue that section 5 of the mortgage agreement gives Defendant discretion in the selection of the insurance company and rate, and that Defendant exercised that discretion capriciously, in bad faith, and in contravention of the parties' reasonable expectations.
>
> **The Court finds that Plaintiffs have the better argument. The *Cox* case [*Cox v. CSX Intermodal, Inc.*, 732 So. 2d 1092, (Fla. 1st DCA 1999)] provides that, as long as the implied covenant does not vary the express terms of the contract, the failure to perform a discretionary act in good faith may be a breach of the implied covenant of good faith and fair dealing.** Plaintiffs have alleged sufficient facts to show that Defendant acted capriciously and in bad faith when it exercised its discretion under section 5 of the mortgage agreement. Thus, Plaintiffs have stated a claim for this cause of action.

678 F. Supp. 2d at 1278–79 (emphasis added). *Abels* followed the well-established principle that "[a] breach of the implied covenant of good faith and fair dealing is not an independent cause of action, but attaches to the performance of a specific contractual obligation." *Centurion Air Cargo, Inc. v. United Parcel Serv. Co.*, 420 F.3d 1146, 1151 (11th Cir. 2005) (citing *Cox*, 732 So. 2d at 1097). This principle does not require a plaintiff to bring a separate breach of contract *claim* but instead acts as "'a gap-filling default rule,' which comes into play 'when a question is not resolved by the terms of the contract or when one party has the power to make a discretionary decision without defined standards.'" *Speedway SuperAmerica, LLC v. Tropic Enters., Inc.*, 966 So. 2d 1, 3 (Fla. 2d DCA 2007) (quoting *Publix Super Mkts., Inc. v. Wilder Corp. of Del.*, 876 So. 2d 652, 654 (Fla. 2d DCA 2004)).

As such, a claim for breach of the implied covenant applies when a question is *not* resolved by the terms of the contract or when one party has the power to make a discretionary decision without defined standards, and a party is not required to allege an express breach in order to state a claim. This rule makes sense. Otherwise, a defendant who had not breached

an express contractual term would have absolute immunity to exercise the discretion afforded it by contract in bad faith. Accordingly, the law provides only that the duty of good faith "must relate to the performance of an express term of the contract." *Hosp. Corp. of Am. v. Fla. Med. Ctr., Inc.*, 710 So. 2d 573, 575 (Fla 4th DCA 1998). And "the implied covenant only 'attaches to the performance of a specific contractual obligation.'" *Ernie Haire Ford, Inc. v. Ford Motor Co.*, 260 F.3d 1285, 1291 (11th Cir. 2001) (ellipsis omitted; quoting *Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1314 (11th Cir. 1998). Thus, "[w]here a contract vests a party with discretion, but provides no standards for exercising that discretion, Florida courts have held that the implied duty of good faith and fair dealing attaches as a gap-filling default rule. This standard imposes a duty upon the party vested with discretion to act in a commercially reasonable manner, or a manner that satisfies the reasonable expectations of the other party." *Burger King Corp. v. Broad St. Licensing Grp., LLC*, 469 F. App'x 819, 821 (11th Cir. 2012) (*per curiam*); *see, e.g.*, *Publix Super Mkts.*, 876 So. 2d at 655 (holding that exercise of discretion was reasonable based upon evidence of the commercial needs of the party vested with discretion); *Cox*, 732 So. 2d at 1098 (considering whether exercise of discretion would unreasonably deprive other party of meeting its "costs of operation").

The same logic applies here. The Court has concluded that the insurance policies at issue include discretionary language: "Adjustments in the Monthly Cost of Insurances Rates *may* be made by [Defendant] from time to time, but no more than once a year, and will apply to Insured of the same class." Am. Compl. ¶ 29 (emphasis added). If, as the Court held in granting Defendant's first motion to dismiss, the Defendant has absolute and unfettered discretion to make COI rate adjustments, Defendant nonetheless must do so in good faith. *See* Dec. 19, 2019 Hr'g Tr. at 18 ("I find that the policy here clearly states the defendant *may* adjust the COI rates from time to time." (emphasis added)); Am. Compl. ¶ 70 ("Where an agreement affords one party the power to make a discretionary decision, the duty to act in good faith limits that party's ability to act capriciously to contravene the reasonable contractual expectations of the other party.").[9]

---

[9] Plaintiff does not concede that the policy provides Defendant with discretion to adjust COI rates. *See* Am. Compl. at 19 n.5. Plaintiff sets forth its allegations in the alternative, recognizing of the rulings the Court previously rendered that the policy is discretionary.

Here, as alleged in the Amended Complaint, Defendant did exercise its discretion to adjust the rates when it raised the rates for Plaintiff and each class member at least once within the statutory period.  When it did so, Defendant was required to exercise that discretion in good faith and base its adjustment, either exclusively or principally on future mortality experiences—which it failed to do. Whether Defendant properly exercised its discretion is a pure question of fact that the Court cannot resolve at this stage of the case. *See Battle v. Wachovia Bank, N.A.*, No. 10-21782-Civ., 2011 WL 2580778, at *2 (S.D. Fla. Jun. 29, 2011) (Cooke, J.) (holding that there were genuine issues of material fact as to whether defendant had exercised its discretion under the contract in bad faith even though plaintiffs had "fail[ed] to identify what terms of the contract [defendant] ha[d] breached"); *Cibran Enters., Inc. v. BP Prods. N. Am., Inc.*, 365 F. Supp. 2d 1241, 1257–58 (S.D. Fla. 2005) (entering summary judgment on breach of contract claim but allowing implied covenant claim because a genuine issue existed as to whether defendant had failed to perform express term in good faith).

The Amended Complaint alleges, in unequivocal terms, that (1) Defendant failed to act in good faith with respect to exercising its discretion to adjust COI rates; and (2) Defendant actually raised COI rates over the years, in the face of continual improvement in life expectancies. After initially setting COI rates, Defendant did not merely fail to adjust those rates to reflect decreases in mortality rates, rather, Defendant actually raised the COI on the class policies. Am. Compl. ¶ 37. All the while, Defendant's parent company, CIGNA, repeatedly acknowledged that, consistent with industry experience, mortality rates were improving. *Id.* ¶ 47. To increase COI rates year after year, as Defendant admits now it did, leads to the inevitable inference that Defendant did not exercise its discretion to adjust rates in good faith.

Accordingly, the Amended Complaint states a plausible claim for breach of the implied covenant of good faith and fair dealing.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss should be denied.

## REQUEST FOR HEARING – L.R. 7.1(b)(2)

Plaintiff respectfully requests one-hour for oral argument on Defendant's Motion. Oral argument will allow the Court to question the Parties on Plaintiff's new allegations and counts and the applicability of the law to those allegations.

Dated: March 12, 2020

Respectfully submitted,

KOZYAK TROPIN & THROCKMORTON

*/s/ Benjamin J. Widlanski*
Benjamin J. Widlanski (Fla Bar No. 1010644)
Harley S. Tropin (Fla. Bar No. 241253)
Dwayne A. Robinson (Fla. Bar No. 99976)
Robert J. Neary (Fla. Bar No. 81712)
2525 Ponce de Leon Blvd, 9th Floor
Miami, Florida 33134
Tel: (305) 372-1800 / Fax: (305) 372-3508
Email: rn@kttlaw.com
bwidlanski@kttlaw.com
hst@kttlaw.com
rn@kttlaw.com
drobinson@kttlaw.com

REED SMITH LLP

Edward M. Mullins (Fla. Bar No. 863920)
Christina Olivos (Fla. Bar No. 119580)
Reed Smith LLP
1001 Brickell Bay Drive, Suite 900
Miami FL 33131
Tel.: 786-747-0200 / Fax:  786-747-0299
*Email: emullins@reedsmith.com*
*colivos@reedsmith.com*

Douglas C. Rawles (*pro hac vice*)
Katherine Ellena (*pro hac vice*)
Reed Smith LLP
355 South Grand Avenue, Suite 2900
Los Angeles, CA 90071
Email:  drawles@reedsmith.com
        kellena@reedsmith.com

*Attorneys for Plaintiff Slam Dunk I, LLC*