# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| SLAM DUNK I, LLC, on behalf of itself and all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>CONNECTICUT GENERAL LIFE INSURANCE COMPANY,<br><br>    Defendant. | Case: 1:19-cv-21996-MGC |

**REPLY BRIEF OF DEFENDANT CONNECTICUT GENERAL LIFE INSURANCE COMPANY IN SUPPORT OF MOTION TO DISMISS SLAM DUNK'S AMENDED AND SUPPLEMENTAL CLASS ACTION COMPLAINT**

# **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1
ARGUMENT.........................................................................................................................2
I.     Slam Dunk Fails To State A Claim For Breach Of Contract..............................................2
     A.     Slam Dunk's Challenge To Alleged Adjustments Of COI Rates Contrary To Mortality Expectations Fails Because The Amended Complaint Does Not Allege Any Such Adjustment Of COI Rates ......................................................2
     B.     The Policies Explicitly Permit Application Of Rates Based On Attained Age ................................................................................................................7
     C.     Slam Dunk's Interpretation Of The COI Provision Is Unreasonable ......................8
II.    Slam Dunk Fails To State A Claim For Breach Of The Implied Covenant Of Good Faith And Fair Dealing ..............................................................................................10
CONCLUSION......................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Advance Trust & Life Escrow Services, LTA v. Protective Life Insurance Co.*,
  2019 WL 4572809 (N.D. Ala. Sept. 20, 2019) ................................................................9

*Burger King Corp. v. Broad St. Licensing Group, LLC*,
  469 F. App'x 819 (11th Cir. 2012) ...............................................................................10

*Day v. Taylor*,
  400 F.3d 1272 (11th Cir. 2005) .....................................................................................4

*Ernie Haire Ford, Inc. v. Ford Motor Co.*,
  260 F.3d 1285 (11th Cir. 2001) ...................................................................................10

*Federal Insurance Co. v. Castle Beach Club Condominium Assoc., Inc.*,
  2006 WL 3544835 (S.D. Fla. Dec. 8, 2006) ..................................................................4

*GFF Corp. v. Associated Wholesale Grocers, Inc.*,
  130 F.3d 1381 (10th Cir. 1997) .....................................................................................5

*Hoak v. Ledford*,
  2016 WL 8948417 (N.D. Ga. Sept. 27, 2016) ...............................................................4

*Madura v. Bank of America, N.A.*,
  767 F. App'x 868 (11th Cir. 2019) .................................................................................5

*Maxon v. Sentry Life Insurance Co.*,
  2019 WL 4540057 (W.D. Wis. Sept. 19, 2019) .............................................................8

*Norem v. Lincoln Benefit Life Co.*,
  737 F.3d 1145 (7th Cir. 2013) ....................................................................................8, 9

*Rockwell v. Chase Bank*,
  2011 WL 2292353 (W.D. Wash. June 7, 2011) .............................................................6

*SFM Holdings, Ltd. v. Banc of America Securities, LLC*,
  600 F.3d 1334 (11th Cir. 2010) .....................................................................................4

*Speaker v. U.S. Department of Health & Human Services Centers for Disease
  Control & Prevention*,
  623 F.3d 1371 (11th Cir. 2010) .....................................................................................6

*Swanson v. Bank of America, N.A.*,
  566 F. Supp. 2d 821 (N.D. Ill. 2008) .............................................................................4

*Zapata v. Royal Caribbean Cruises, Ltd.*,
    2013 WL 1296298 (S.D. Fla. Mar. 27, 2013) ............................................................................ 4

# INTRODUCTION

Slam Dunk's Amended Complaint is based on two meritless theories. This Court already correctly rejected the first—*i.e.*, that Connecticut General was obligated to *reduce* its Cost of Insurance ("COI") rates whenever mortality expectations improve in the United States. As this Court held, Slam Dunk's argument contradicts the explicit contract language ("may") that allows, rather than requires, Connecticut General to make adjustments.

The new theory in Slam Dunk's Amended Complaint fares no better. Notably, in its first complaint, Slam Dunk did not protest having received any COI rate "adjustments." But now, in its Amended Complaint, Slam Dunk suddenly claims to have found such rate adjustments in plain sight. The Amended Complaint does not base these assertions on any actual adjustment (or increase) of the rates in the existing COI rate tables governing Slam Dunk's rates. Rather, Slam Dunk's assertions are based on the changes that occur each time the insured grows a year older and Connecticut General applies, from the governing rate table, the rate that corresponds to the insured's new age. These are the so-called "adjustments" on which Slam Dunk's complaint is based.

The problem, as Slam Dunk knows from rate tables in its own possession, is that these allegations do not reflect any *adjustment* of the COI rates that Slam Dunk is required to pay. All the rates alleged by Slam Dunk, before and after the purported "adjustment," are contained in the same, existing tables. What changed each year was not the rates, but rather the age of the person covered by each Policy. The fact that COI rates differ as the insured person ages (*e.g.*, turns from 48 to 49), however, does not reflect any *adjustment* of the COI rates applicable to Slam Dunk. Those rates remain the same. Thus, the same COI rate that applied to a 49-year-old insured on the day that Slam Dunk acquired the policies still applies today (as it does for a 50-year-old, and so on). Rather than reflecting any adjustment, the differences in COI rates by age simply reflect what the Policy states explicitly—*i.e.*, that COI rates "are based on," among other things, "the Insured's Attained Age."

For this reason, Slam Dunk fights tooth and nail to preclude this Court from considering the rate tables on this Motion to Dismiss, on the ground that the Amended Complaint does not expressly refer to the tables. That argument is meritless. The Amended Complaint repeatedly references the COI rates contained in those tables. Indeed, Slam Dunk *relies* on those rates to make out its claims. Similarly, the Policies on which Slam

1

Dunk relies to plead breach of contract refer to the rate tables. The tables are thus plainly central to the complaint. Courts regularly consider documents not attached to the complaint in these circumstances. Otherwise, a plaintiff could bring a case by pleading information contained in documents outside the complaint but, simultaneously, avoid the dismissal warranted by those same documents simply by declining to attach or expressly reference them. That is precisely what Slam Dunk tries here. It affirmatively uses the COI rates contained in the rate tables to plead its claims, omits any allegations about the context in which the rates are charged, and then argues that the very documents that contain, establish, and provide the context for those contractually-charged rates (*i.e.*, the rate tables) should be ignored. The law forecloses that position.

Nor should Slam Dunk's purported "dispute" of the authenticity of the rate tables detain this Court long. Slam Dunk raises no serious question regarding the authenticity of the tables and, importantly, offers no dispute whatsoever regarding the accuracy of the rate information in the tables (indeed, Slam Dunk relies on the very same rates found in the tables). Nor could Slam Dunk raise any such dispute, given that it possesses the same rate tables, or an earlier version of one table, showing the same rates corresponding to the same attained ages. Slam Dunk produced those tables to Connecticut General in discovery before this Court dismissed the original complaint.

For these reasons, as explained further in this reply brief, the Amended Complaint should be dismissed with prejudice.

## ARGUMENT

I.  **Slam Dunk Fails To State A Claim For Breach Of Contract**

   A.  **Slam Dunk's Challenge To Alleged Adjustments Of COI Rates Contrary To Mortality Expectations Fails Because The Amended Complaint Does Not Allege Any Such Adjustment Of COI Rates**

The new theory of Slam Dunk's Amended Complaint is that in the face of purported improvements in mortality experience in the five years preceding the complaint (specifically, in 2015, 2018, and 2019, *see* Am. Compl. ¶¶ 45-47), Connecticut General adjusted its COI rates upwards. Those alleged adjustments were wrong, Slam Dunk contends, because in its view, the Policies require COI rates to be determined solely or principally based on expectations of future mortality. *See, e.g., id.* ¶ 7. Thus, Slam Dunk argues, if mortality

2

experience was improving but Connecticut General at the same time was adjusting COI rates upwards, then Connecticut General must have breached the Policies.

The problem with that theory, as Slam Dunk knows based on the Policy rate tables it possesses, is that Connecticut General *did not adjust* the COI rates on Slam Dunk's policies in the last five years—or at all since the time Slam Dunk acquired the Policies. What Slam Dunk tries to characterize as adjustments are no such thing. As Connecticut General's opening brief and the applicable Policy rate tables demonstrate—and, notably, Slam Dunk never disputes—the increases that Slam Dunk alleges (*i.e.*, the so-called adjustments) are simply the application each year of the rate that corresponds to the attained age of the insured, pursuant to the existing Policy rate table.[1]  Or, to put it more concretely, the rate increase upon which Slam Dunk's new "adjustment" theory is based is the difference between, for example, the COI rate when the insured turns 49 years old compared to the rate when the insured was 48 years old the year before.[2]  Those rates have not changed nor, importantly, does Slam Dunk allege that they have ever changed. Again, to put it more concretely, the Amended Complaint makes no allegation (because it cannot) that the COI rate for a 49-year-old person (or for a 50-year-person, and so on) under each Policy has ever changed since Slam Dunk acquired the Policies. Thus, while the Amended Complaint is based on a theory that Connecticut General adjusted COI rates within the five years preceding the filing of this case, there were no such adjustments during that time—period.

For this reason, Slam Dunk does not engage on the substance of Connecticut General's demonstration, nor does Slam Dunk assert that the COI rates about which it complains are something other than as described in Connecticut General's Motion to Dismiss. Instead, Slam Dunk makes a procedural argument, struggling mightily to shield this Court's eyes from the Policy rate tables containing the challenged COI rates. Slam Dunk's argument, however, both misapprehends the law and ignores the substance of the Amended Complaint's allegations.

The law is clear that a court may, on a motion to dismiss, consider documents that

---

[1]  *See* Def. CGLIC's Mot. to Dismiss Slam Dunk's Am. & Supp. Class Action Compl. ("MTD Br.") [ECF No. 72], at 9-11; Decl. of Anne Marie Nicholas in Support of Def.'s Mot. to Dismiss Am. Compl. ("Nicholas Decl.") [ECF No. 72-1], Exs. A-C.

[2]  *See* MTD Br. 9-10 & Fig. 2.

are central to the complaint and whose authenticity is not in question. *See SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010); *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005); *Zapata v. Royal Caribbean Cruises, Ltd.*, 2013 WL 1296298, at *6 (S.D. Fla. Mar. 27, 2013). A complaint need not expressly refer to or incorporate a document for it to be properly considered on a motion to dismiss. Rather, courts also may consider documents that a complaint implicitly references. *See, e.g.*, *Hoak v. Ledford*, 2016 WL 8948417, at *7 (N.D. Ga. Sept. 27, 2016) ("[A]lthough Plaintiffs do not expressly reference the Instrument of Appointment in their Complaint, … Plaintiffs' Complaint acknowledges that [defendant] could delegate authority to administer the plans to an entity other than the Committee, therefore the Court finds the Complaint fairly encompasses [defendant's] delegation authority and thus incorporates by reference the Instrument of Appointment." (emphasis omitted)); *Swanson v. Bank of Am., N.A.*, 566 F. Supp. 2d 821, 824 (N.D. Ill. 2008) ("Although the [complaint] is silent as to [plaintiff's] receipt of the agreement, the Court may consider extrinsic documents in a 12(b)(6) motion where the documents are implicitly referenced within the complaint."). Courts also may consider a document outside the pleadings when the complaint makes allegations about the "contents" of the document. *Day*, 400 F.3d at 1276; *see also Federal Ins. Co. v. Castle Beach Club Condo. Assoc., Inc.*, 2006 WL 3544835, at *2 (S.D. Fla. Dec. 8, 2006) (same). If a complaint relies on a document or its contents to plead the complaint's claims, that document is central to the complaint. *See Day*, 400 F.3d at 1276.

Under these well-established principles, the Court can and should consider the Policy rate tables. The Amended Complaint repeatedly refers to the rates that Slam Dunk is charged under its Policies. *See* Am. Compl. ¶¶ 1-2, 6, 35-37. Indeed, these allegations, and the assertions about the differences in COI rates year over year, are the basis for Slam Dunk's contention that Connecticut General breached the Policies. *See id.* ¶¶ 60, 62, 65, 72. The Amended Complaint also repeatedly relies on the Policy (*i.e.*, the contract). *See, e.g.*, *id.* ¶¶ 1-5, 24, 29. And, contrary to Slam Dunk's arguments, that Policy refers to the rate tables for the COI rates to be charged, stating that the monthly deduction from a Policy's cash value "will be the Monthly Cost of Insurance Rate for Life Insurance *based on the Insured's Attained Age and the Insured's Coverage Amount.*" Am. Compl. Ex. A, at 17 (emphasis added). The italicized language plainly describes the rate tables; those tables show the numerical

4

COI rate for each attained age, applicable to each $1,000 of coverage. *See* Nicholas Decl. Exs. A-C. The rate tables are, accordingly, central to the complaint. It is irrelevant whether the Amended Complaint explicitly references the rate tables themselves or just the rates derived from those tables. The important point is that Slam Dunk's Amended Complaint alleges the all-important contents of those documents (*i.e.*, the COI rates) and then, to plead its claims, relies on both those contents and the contract that refers to those tables.

The rationale for allowing courts to consider such documents applies with special force here, where Slam Dunk improperly seeks to have things both ways. Slam Dunk seeks to plead claims by relying on the rates found in the governing rate tables but then, for purposes of the Motion to Dismiss, seeks to preclude the Court from considering the tables because the complaint does not expressly refer to the tables. The Eleventh Circuit has rejected the same argument in another context because of its unfairness. In *Madura v. Bank of America, N.A.*, 767 F. App'x 868 (11th Cir. 2019), the plaintiffs brought claims based on the defendant's conduct in previous litigation between the parties. Nevertheless, the plaintiffs argued it was error for the district court, in deciding (and granting) a motion to dismiss, to consider certain orders entered in that litigation. The Eleventh Circuit flatly rejected the plaintiffs' attempt to have their cake and eat it too: "The [plaintiffs] cannot use their litigation history as both the basis for their instant claims and the reason the district court cannot review those claims." *Id.* at 870-871. As the Tenth Circuit has explained, "otherwise, a plaintiff with a deficient claim could survive a motion to dismiss simply by not attaching a dispositive document upon which the plaintiff relied." *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1385 (10th Cir. 1997). In short, the law forecloses Slam Dunk's attempt to shield this Court's eyes from the rate tables that establish and contain the COI rates at the heart of its own complaint.

Slam Dunk also claims to "dispute" the authenticity of the rate tables but, in reality, it raises no serious question concerning authenticity. Slam Dunk's argument is that the declarant, Ms. Nicholas, "does not state that she bases her declaration on her personal knowledge." Pl. Slam Dunk I, LLC's Opp. to Mot. to Dismiss ("Opp. Br.") [ECF No. 76], at 7. That argument borders on frivolous. In her declaration, Ms. Nicholas states her position at Connecticut General, testifies she is "familiar with the facts and circumstances set forth in this Declaration," notes the specific Policies described in Paragraphs 35 and 36

5

of the Amended Complaint, and testifies that the exhibits to her declaration are the COI rate tables applicable to each of those Policies. Nicholas Decl. ¶¶ 1, 3-6. Slam Dunk does not dispute that Ms. Nicholas thus testifies to her *own* familiarity with the facts to which *she* is testifying (*i.e.*, her *personal* knowledge of those facts). Nor does Slam Dunk offer a single basis for questioning the accuracy of Ms. Nicholas's testimony. And, importantly, Slam Dunk never disputes the accuracy of the COI rates in the tables (on which, again, Slam Dunk's own complaint affirmatively relies). In these circumstances, simply stating conclusorily that it "disputes" the rate tables' authenticity is no basis for precluding their consideration by this Court. *See, e.g.*, *Rockwell v. Chase Bank*, 2011 WL 2292353, at *1 (W.D. Wash. June 7, 2011) ("[P]laintiff's conclusory objection to the P & A is not reasonable because plaintiff has not identified a single inaccuracy.").

Moreover, Slam Dunk *could not* dispute the existence, authenticity, or accuracy of either the rate tables or the COI rates that they contain. This is because Slam Dunk itself produced to Connecticut General (in discovery exchanged before this Court dismissed the original complaint) two of the exact same rate tables (Hyatt and Continental Airlines) and an earlier version of the third rate table (Magellan), all of which contain the same age-based schedule of COI rates. *See* Decl. of Noah Levine In Support of Reply Brief of CGLIC, Exs. A-C (filed with this brief).[3]

Finally, hidden in a footnote, Slam Dunk offers a last, half-hearted response in the event the Court were to consider the rate tables, arguing that the age-based differences in the tables should nevertheless be considered improper "adjustments." *See* Opp. Br. 10 n.4. Slam Dunk's reasoning is far from clear, but the point is irrelevant. The theory of Slam Dunk's complaint is that adjustments are wrong if the COI rates change in a manner allegedly contrary to improvements in mortality experience. That theory has no purchase here. Again, the only *so-called* adjustment identified in the Amended Complaint (as noted, there were no *actual* adjustments of the rate tables) is the application of the COI rate that corresponds to the next attained age when the person covered by a Policy grows a year

---

[3] *Cf. Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1380 n.8 (11th Cir. 2010) (noting plaintiff's dispute of transcript's authenticity, but court's subsequent consideration of the transcript on motion to dismiss after defendant's supplementation of transcript with corresponding video).

older. And whatever Slam Dunk may allege or argue, one thing is pellucidly clear: Slam Dunk does not allege or argue that expectations of mortality *improved with age*.

### B. The Policies Explicitly Permit Application Of Rates Based On Attained Age

There is a second, independent reason why the Amended Complaint fails to state a claim even if the mere application of a higher COI rate corresponding to the next year of attained age were somehow an adjustment of COI rates (it is not). The rate change at issue in the complaint results only from application of rates corresponding to each attained age of the person whose life is insured by the Policy. That is, the reason that the rate changes is because the insured *attains* a new (older) *age*. This is expressly authorized by the contract, in two places. The Monthly COI Rates provision explicitly states that COI rates may be "based on the Insured's Attained Age." Am. Compl. Ex. A, at 18. And the Monthly Deduction provision likewise explicitly states that the monthly deduction "will be the Monthly [COI] Rate for Life Insurance *based on the Insured's Attained Age* and the Insured's Coverage Amount." *Id.* at 17 (emphasis added). For this reason, Slam Dunk cannot state a claim based simply on Connecticut General having applied rates in rate tables organized by attained age. The contract plainly and expressly permits Connecticut General to do so.

Slam Dunk offers three sentences in response, again hidden in a footnote. *See* Opp. Br. 14 n.8. The first response is merely a repeat of their procedural argument above—which, for the reasons set forth above, has no merit. Slam Dunk cannot avoid dismissal by screening this Court from the tables that establish and contain the challenged rates, especially when Slam Dunk never once in its 19-page brief disputes that the so-called increases are just differences in the rates applied *by attained age*.

Slam Dunk next argues that rather than the sentences in the Policy stating that COI rates are based on "Attained Age," a different sentence should be accorded overriding importance—the statement that COI rates are "determined by CG based on its expectations as to future mortality experience." Am. Compl., Ex. A, at 18. But Slam Dunk offers no reason why that sentence would require Connecticut General to ignore all the other factors that the Policy says COI rates may be based upon, including "Attained Age." And, regardless, as Slam Dunk itself alleges in its Amended Complaint, "the Insured's Attained Age" is "tied *directly* to expectations of future mortality experience" (Am. Compl. ¶ 33

7

(emphasis added)), so there is no inconsistency in any event. Ultimately, the important point is this: the only rate increase that the Amended Complaint alleges is the application of different rates corresponding to the different attained ages of the insured. That application of COI rates is *explicitly* (twice) provided for in the Policy so it cannot give rise to any claim.

###       C.     Slam Dunk's Interpretation Of The COI Provision Is Unreasonable

In addition to the above two grounds, each of which independently warrants dismissal of the Amended Complaint, Slam Dunk's interpretation of the Policy language and its assertion that the facts alleged in the complaint state a plausible claim for breach of that interpretation are wrong.

First, Slam Dunk's argument that the Policy must be read to require that COI rates be based *solely* on expectations of future mortality cannot be squared with the Policy language or the case law. As Slam Dunk itself argues, courts in Florida must "'avoid constructions which render a clause of the contract superfluous or without meaning.'" Opp. Br. 14 n.8 (quoting *Veniard v. NB Holdings Corp.*, 2000 WL 33988085, at *8 (M.D. Fla. Aug. 8, 2000)). Yet, as noted, to support its contract interpretation, Slam Dunk is forced to focus on just a single sentence of the Monthly COI Rates provision, ignoring the rest. But the part that Slam Dunk ignores conclusively shows that the contract cannot mean what Slam Dunk argues—*i.e.*, it cannot mean that COI rates must be based *solely* on mortality expectations. The very *first* sentence of the COI rates provision states that COI rates are also "based on" much more—"the Insured's Attained Age, the type of benefit, the Class of Insured and whether premiums for that Insured are paid directly to CG or through payroll deductions." That plain text alone refutes Slam Dunk's reading of the Policy.

If that were not enough, the only federal court of appeals to have addressed Slam Dunk's theory, as well as the one district court to have addressed it under Florida law, both rejected Slam Dunk's argument that a provision saying that COI rates are "based on" something means that the rates must be *exclusively* based on such factors. *See Norem v. Lincoln Benefit Life Co.*, 737 F.3d 1145, 1149-50 (7th Cir. 2013); *Maxon v. Sentry Life Ins. Co.*, 2019 WL 4540057 (W.D. Wis. Sept. 19, 2019). These decisions make sense, considering the life insurance products to which these provisions pertain. The COI rates provision logically "spells out these factors for the policyholder so that he might have a sense of which

8

factors unique to him will affect his ultimate COI rate," but the mere use of the phrase "based on" does not suggest that a life insurer "is prohibited from considering factors" beyond those specific factors. *Norem*, 737 F.3d at 1150. Indeed, were it otherwise, given all the factors traditionally considered by actuaries and insurance regulators in the pricing of life insurance (*see* MTD Br. 13-14), it would mean that the parties here entered into a contract provision entitled "Monthly Cost of Insurance Rates" that does not even provide for rates that cover the actual *cost of insurance*. As the Seventh Circuit reasoned in related circumstances, "[t]his approach, however, seems disconnected from the reality of insurance." *Norem*, 737 F.3d at 1554-55.

Perhaps for these reasons, Slam Dunk falls back on the argument that the Policy should be read to mean that COI rates must be *principally* based on mortality expectations. The COI rates provision, however, does not say that either; rather, it refers as well to the other factors set forth above. But even if Slam Dunk were right, the Amended Complaint does not plausibly allege a violation of that reading of the contract. The fact that Connecticut General varies its rates based on the attained age of the insured does not plausibly suggest that the company ignores mortality expectations or accords such expectations little weight. To the contrary, again, as Slam Dunk itself alleges in its Amended Complaint, "the Insured's Attained Age" is "tied *directly* to expectations of future mortality experience." Am. Compl. ¶ 33 (emphasis added). Thus, even if the Court were to endorse Slam Dunk's atextual reading of the Policy, the allegations of the Amended Complaint do not plausibly suggest that Connecticut General violated that interpretation through the application of COI rates based on attained age.[4]

---

[4] Slam Dunk briefly argues (at Opp. Br. 15-16) that the Court should reconsider its earlier dismissal of its claim that Connecticut General was required to *reduce* Slam Dunk's COI rates. Slam Dunk rests its argument on *Advance Trust & Life Escrow Services, LTA v. Protective Life Insurance Co.*, 2019 WL 4572809 (N.D. Ala. Sept. 20, 2019). That decision has no bearing here. Slam Dunk fails to note that *Advance Trust* rested its interpretation of the policy there on the fact that it did not use the word "*may*." *Id.* at *5. Of course, that is not true of Slam Dunk's Policy, which *does* make clear through use of the word "*may*" that Connecticut General is not obliged to continually review and adjust COI rates. *See* Am. Compl., Ex. A, at 18 ("Adjustments in the Monthly [COI] Rates *may be made* by CG from time to time." (emphasis added)). This Court's dismissal properly focused on this very phrase. *See* 12/18/19 Tr. 18 ("[T]he policy here clearly states the defendant *may* adjust the COI rates from time to time. That plain language refutes the plaintiff's claim that the defendant is required to adjust the rates." (emphasis added)). Slam Dunk provides no valid reason for the Court to revisit its earlier ruling.

## II. Slam Dunk Fails To State A Claim For Breach Of The Implied Covenant Of Good Faith And Fair Dealing

Finally, Slam Dunk is wrong that its implied-covenant claim can survive notwithstanding the numerous failures of its contract claim described above. The reasons are simple and straightforward. First, as Slam Dunk acknowledges (Opp. Br. 18), "the implied covenant [only] attaches … to the performance of a specific contractual obligation." *Ernie Haire Ford, Inc. v. Ford Motor Co.*, 260 F.3d 1285, 1291 (11th Cir. 2001) (internal quotation marks omitted) (citation omitted). Thus, *if* a contract vests a party with discretion to undertake an act, and *if* the party undertakes that discretionary act, *then* the implied covenant fills a gap by requiring that the act be carried out "in a commercially reasonable manner, or a manner that satisfies the reasonable expectations of the other party." *Burger King Corp. v. Broad St. Licensing Grp., LLC*, 469 F. App'x 819, 821 (11th Cir. 2012) (*per curiam*) (quoted at Opp. Br. 18). The problem for Slam Dunk is that Connecticut General did not undertake the alleged discretionary act authorized by the Policy—*i.e.*, make "adjustments" in the COI rates. For the same reasons as in Argument Part I.A, *supra*, the implied-covenant claim also fails.

Slam Dunk's implied-covenant claim is also barred by the express terms of the Policy. A first principle of the implied-covenant doctrine is that "the implied covenant cannot override an express contractual term." *Ernie Haire Ford*, 260 F.3d at 1291. As explained in Argument Part I.B, *supra*, the express terms of the contract twice authorize Connecticut General to apply COI rates based on attained age. That is all that the Amended Complaint alleges—Connecticut General's application of different COI rates according to the attained age of the insured. Because the Policy *expressly* authorizes application of COI rates in that manner, no *implied* covenant can require otherwise.

For these reasons, the implied-covenant claim should be dismissed as well.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Slam Dunk's Amended Complaint with prejudice.

Dated: April 2, 2020            Respectfully submitted,

                                              s/Shari Gerson
Shari Gerson (Florida Bar No: 17035)
GRAY ROBINSON, P.A.
401 East Las Olas Boulevard, Suite 1000
Fort Lauderdale, FL 33301
Tel: (954) 761-8111
Email: shari.gerson@gray-robinson.com

Noah A. Levine (*pro hac vice*)
David E. Rudin (*pro hac vice*)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel: (212) 230-8860
Email: noah.levine@wilmerhale.com
       david.rudin@wilmerhale.com

Felicia H. Ellsworth (*pro hac vice*)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Tel: (617) 526-6000
Email: felicia.ellsworth@wilmerhale.com

*Attorneys for Defendant Connecticut General Life Insurance Company*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 2, 2020 foregoing was filed with the Clerk of the Court using CM/ECF. I further certify that a true and correct copy of the foregoing is being served on the following via transmission of Notices of Electronic Filing generated by CM/ECF:

| | |
|---|---|
| Edward M. Mullins, Esq.<br>R. Hugh Lumpkin, Esq.<br>Matthew B. Weaver, Esq.<br>Christina D. Olivos, Esq.<br>REED SMITH LLP<br>1001 Brickell Bay Drive, Suite 900<br>Miami, FL 33131<br>Tel: 786-747-0200, Fax: 786-747-0299<br>hlumpkin@reedsmith.com<br>nweaver@reedsmith.com<br>colivos@reedsmith.com<br>*Counsel for Plaintiff* | Douglas Rawles Esq. (*pro hac vice*)<br>Ashley Jordan, Esq.<br>Katherine J. Ellena, Esq. *(pro hac vice)*<br>REED SMITH LLP<br>355 South Grand Avenue, 28th Floor<br>Los Angeles CA 90071<br>Tel: 213-457-8000, Fax: 213-457-8080<br>rgiller@reedsmith.com<br>drawlers@reedsmith.com<br>ajordan@reedsmith.com<br>kellena@reedsmtih.com<br>*Counsel for Plaintiff* |
| Benjamin J. Widlanski, Esq.<br>Harley S. Tropin, Esq.<br>Dwayne A. Robinson, Esq.<br>Robert J. Neary, Esq.<br>KOZYAK TROPIN & THROCKMORTON LLP<br>2525 Ponce de Leon Blvd., 9th Floor<br>Miami, Florida 33134<br>Tel: 305-372-1800, Fax: 305-372-3508<br>bwidlanski@kttlaw.com<br>hst@kttlaw.com<br>drobinson@kttlaw.com<br>rn@kttlaw.com<br>*Co-Counsel for Plaintiff and proposed Class* | Markenzy Lapointe, Esq.<br>PILLSBURY WINTHROP SHAW PITTMAN LLP.<br>600 Brickell Avenue, Suite 3100<br>Miami, FL 33131<br>Tel: 786-913-4900<br>markenzy.lapointe@pillsburylaw.com<br><br>Richard C. Giller (pending pro hac vice)<br>PILLSBURY WINTHROP SHAW PITTMAN LLP.<br>725 South Figueroa Street, Suite 2800<br>Los Angeles, CA 90017-5406<br>Tel: 213-488-3624<br>richard.giller@pillsburylaw.com<br>*Counsel for Plaintiff* |

    s/ Shari Gerson
    SHARI GERSON, FL Bar No. 17035
    Gray Robinson, P.A.
    401 East Las Olas Boulevard, Suite 1000
    Fort Lauderdale, Florida 33301
    Telephone: 954-761-8111
    Email: shari.gerson@gray-robinson.com
    ***Attorneys for Defendant Connecticut General Life Insurance Company***