UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:19-cv-21996-MGC

SLAM DUNK I, LLC, on behalf of itself and
all others similarly situated,

      Plaintiff,

Vs.

CONNECTICUT GENERAL LIFE
INSURANCE COMPANY,

      Defendant.

_____/

**PLAINTIFF'S MOTION TO STRIKE DEFENDANT'S
IMPROPER, DUPLICATIVE AND IRRELEVANT EXHIBITS**

Pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, Plaintiff Slam Dunk I, LLC respectfully moves this Court for an Order striking Defendant's improper, duplicative and irrelevant exhibits to its Motion to Dismiss and Reply and states the following in support.

**I.     INTRODUCTION**

Consistent with this Court's Order [Dkt. 64], Plaintiff submitted its Amended Complaint, specifically tailoring its allegations to address the Court's prior ruling. In particular, the Amended Complaint (like the original Complaint) alleged that Defendant's obligation to base the monthly Cost of Insurance (COI) rates on expectations of future mortality of its policyholders created an affirmative obligation on Defendant to include improved mortality experiences when adjusting COI rates (as they did) and that Defendant failed to do so.  Plaintiff reiterated these claims in its Amended Complaint and included additional allegations that Defendant actually and wrongfully raised COI rates despite improved mortality rates, thus breaching its express and implied contractual obligations. In fact, the extra-judicial exhibits submitted by Defendant confirm this

allegation.  The rates were adjusted in only one direction—up—despite the fact that mortality rates have gone consistently the other direction—down—and, in so doing, Defendant unequivocally violated its obligations under the policies through this pernicious practice.

In support of its Complaint and its Amended Complaint, Plaintiff attached as Exhibit A, a copy of a group universal life insurance policy issued to employees of Citibank (the "Citibank Policy"), who are putative class members.  As discussed more fully below, the only reference to a rate table or chart referenced anywhere in the Citibank Policy is a "Table of Guaranteed Maximum Monthly Life Insurance Rates" ("Policy Rate Table") contained in the body of the policy, which advised the policyholders that Defendant could not charge more than the amounts listed in the Policy Rate Table in accordance to the listed attained age of the policyholders.  No other rate tables were included or referenced in the Citibank Policy.

Faced with these new allegations which expose Defendant's improper upward adjustments of its COI rates despite improved mortality rates, Defendant decided to venture completely outside the lanes of the Amended Complaint and the Citibank Policy and now argues that the only factor to be considered in establishing COI rates is the "Attained Age" of the policyholders. As support for this baseless claim, Defendant attached three exhibits to its Motion and its Reply [Exhibits A-C ("Defendant's Exhibits")] that were not only never referenced in the Amended Complaint or in the Citibank Policy, but also lack any relevance to the Amended Complaint.  In order to circumvent the rule limiting a motion to dismiss to those matters raised in the Amended Complaint, Defendant contends that Plaintiff "relies on [Defendant's Exhibits] to make out its claims," despite a complete absence of any such reference, thereby seeking to elevate Defendant's Exhibits to be central to the insurance contract and the Amended Complaint.

CASE NO. 1:19-cv-21996-MGC

Even if this Court were to consider Defendant's Exhibits, despite the fact that those charts are not anywhere in the Amended Complaint or in the Citibank Policy and are not central to the Amended Complaint, Defendant's Exhibits conclusively establish that Defendant improperly adjusted the monthly cost of insurance rates upward—and, in some instances by as much as a 12%[1] increase—from one year to the next—on every policyholder's birthday without taking into account constantly improving life expectancy experience for such policyholders.  Instead, the Defendant's Exhibits list upward rate adjustments despite the express contractual requirement that "Monthly Cost of Insurance Rates *are determined by* [Defendant] based on its expectations as to future mortality experience."[2]

The rates listed on Defendant's Exhibits further establish the critical need for full discovery into such issues, among others, as (1) how Defendant determined the rates listed on those Exhibits; (2) what factors were considered by Defendant (beyond an employee's attained age) to justify the fact that the listed rates for employees of a particular age differ significantly between employers; (3) what analysis, if any, Defendant made to determine rates based on Defendant's "expectations

---

[1] Exhibits B and C show that the listed rate for a 77-year old Magellan Health Service employee and a 77-year old Continental Airlines employee is $79.06 and the listed rate for a 78-year old Magellan Health Service employee and a 78-year old Continental Airlines employee is $88.55 which represents a 12% increase from one year to the next for the employees.

[2] The highlighted phrase "*are determined by*" represents a mandatory contractual requirement as opposed to a discretionary requirement.  As an example of this practice, Defendant attaches a 2003 rate table for Magellan Health Services as Exhibit B to the reply [Dkt. 86] listing identical rates set out on the Magellan 2009 rate table attached as Exhibit B to the instant motion [Dkt. 72]. Thus, for at least the 6-year period between 2003 and 2009, Defendant adjusted the rates upward but utterly failed to comply with its non-discretionary contractual obligation to determine the monthly cost of insurance rates "based on its expectations as to future mortality experience." Instead, defendant simply adjusted the monthly cost of insurance rates upward on every policyholder's birthday even though mortality rates were improving every year.

3

CASE NO. 1:19-cv-21996-MGC

as to future mortality experience" as it was contractually obligated to perform; and (4) if such a

mortality analysis was undertaken, what impact that analysis had on the listed rates.  As a result,

rather than supporting dismissal of this action, Defendant's Exhibits support denying the motion

to dismiss so that discovery can proceed in this case.

In sum, the Court should strike Defendant's Exhibits because (1) they were not mentioned

in or relied upon by Plaintiff in its Amended Complaint nor referenced anywhere in the Citibank

Policy and (2) they are not central to Plaintiff's case. Defendant's introduction of these exhibits

into this matter has only served to confuse the issues. For these reasons, as further set forth below,

Defendant's Exhibits should all be stricken.

## II.      LEGAL STANDARD

Federal Rule of Civil Procedure 12(f) authorizes the Court to "strike from a pleading an

insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ.

P. 12(f). Rule 12(f)'s purpose is to "avoid the expenditure of time and money that must arise from

litigating spurious issues by dispensing with those issues prior to trial." *Zytax, Inc. v. Green Plains*

*Renewable Energy, Inc*., No. H-09-cv-2582, 2010 WL 2219179, at *5 (S.D. Tex. May 28, 2010)

(quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993)). Rule 12(f) is also designed

to "reinforce the requirement in Rule 8(e) that pleadings be simple, concise, and direct." 5C

Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1380 (3d. ed. 2014).

This motion to strike should be granted because the asserted defenses are insufficient as a matter

of law, will confuse the issues in the case, or will otherwise prejudice the moving party. *See, e.g.,*

*Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc*., 677 F.2d 1045, 1057–61

CASE NO. 1:19-cv-21996-MGC

(5th Cir. 1982); *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001); *See generally* 5C Wright & Miller, *supra*, § 1381.

Courts in this Circuit have further provided that while there is not a certain minimum number of mentions in a complaint before a defendant may be permitted to attach such document to his motion, the primary consideration of this Court in evaluating the propriety of exhibits to a motion to dismiss is "whether or not the documents are referred to in the plaintiff's complaint, are central or integral to the plaintiff's claim, and undisputed." *Reynolds v. Gables Residential Services, Inc.*, 428 F.Supp.2d 1260, 1263 (M.D.Fla.2006) (citing *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1281 n. 16 (11th Cir.1999). Defendant's Exhibits should be stricken.

## III.    ARGUMENT

### A.    Defendant's Extraneous Exhibits Should Be Stricken.

Defendant's claims that its extraneous exhibits are referenced in any policy contract or are central to Plaintiff's case are pretextual and unfounded. Defendant inaccurately claims in its Reply that the Citibank Policy attached to the Amended Complaint:

> "refers to the rate tables for the COI rates to be charged, stating that the monthly deduction from a Policy's cash value 'will be the Monthly Cost of Insurance Rate for Life Insurance *based on the Insured's Attained Age and the Insured's Coverage Amount*.' Am. Compl. Ex. A, at 17 (emphasis added). The italicized language plainly describes the rate tables; those tables show the numerical rate for each attained age, applicable to each $1,000 of coverage. *See* Nicholas Decl. Exs. A-C. The rate tables are, accordingly, central to the complaint."

*See*, Dkt. 86 at pages 8-9 (underlined emphasis added). That is simply not true.

In making this claim, Defendant seeks to mislead the Court into believing that Defendant's Exhibits are the Rate Tables referenced on page 17 of the Citibank Policy which, as demonstrated below, they clearly are not. Further, the language italicized by Defendant is not even the controlling

language in that quote. The controlling language of the Citibank Policy is the phrase "<u>Monthly</u>

<u>Cost of Insurance Rate</u>," which is set off with initial capital letters (meaning it's a defined term in

the policy).

The critical term "Monthly Cost of Insurance Rates," explicitly referenced on Page 17 of

the Citibank Policy (Dkt. 69 at 30), is defined on Page 18 of that Policy.  The term, set out both

initial capital letters and bold typeface in the Citibank Policy, provides:

> "The Monthly Cost of Insurance Rates are based on the Insured's Attained Age, the
> type of benefit, the Class of Insured and whether premiums for that Insured are paid
> directly to CG or through payroll deductions.  Monthly Cost of Insurance Rates <u>are</u>
> <u>determined by CG based on its expectations as to future mortality experience</u>.
> Adjustments in the Monthly Cost of Insurance Rates may be made by CG from
> time to time, but no more than once a year, and will apply to Insureds of the same
> class.  Under no circumstances with the Monthly Cost of Insurance Rates for Life
> Insurance ever be greater than those show in the <u>Table of Guaranteed Maximum</u>
> <u>Life Insurance Rates</u>.   Such guaranteed maximum rates are based on the
> Commissioners 1980 Extended Term Table (age last birthday) and 4% effective
> annual interest."  (Dkt. 69 at 31, emphasis added).

Thus, notwithstanding Defendant's claims to the contrary, the Monthly Cost of Insurance

Rates to be charged by Defendant, as defined in the Citibank Policy, are not based solely on "the

Insured's Attained Age and the Insured's Coverage Amount," and Defendant's Exhibits are not

referenced anywhere in the Amended Complaint of the Citibank Policy. Instead, that information

is found within the Citibank Policy itself in the "Table of Guaranteed Maximum Life Insurance

Rates."  [Dkt. 69 at pages 34 and 35; pages 26 to 28 of the policy].  That table is the <u>only table or</u>

<u>chart referenced or set out anywhere in the Citibank Policy</u> and, pursuant to that contract of

insurance, Defendant could charge no more than the rates set out below for employees who reached

the listed attained ages.  The chart is reproduced in part below:

**TABLE OF GUARANTEED MAXIMUM MONTHLY LIFE INSURANCE RATES[3]**

| ATTAINED AGE | RATE -- Per $10,000 of Insurance |
|:---:|:---:|
| 75 | $75.83 |
| 76 | $83.43 |
| 77 | $91.36 |
| 78 | $99.69 |
| 79 | $108.70 |
| 80 | $118.70 |

Tellingly, the rates set out in the rate tables attached as Exhibits A through C of the Declaration of Anne Marie Nicholas submitted with the second motion to dismiss, and the same exhibit numbers attached to the Declaration of Noah A. Levine, Esq. submitted with Defendant's reply in support of its second motion to dismiss, demonstrate that the listed rates for a particular employee who attained a particular age, are not even consistent as between the various employers represented on those rate tables (none of which are even Citibank). For example, according to Defendant's Exhibits, the listed rate for a 75-year old Hyatt employee is $57.78 per $10,000 worth of coverage whereas the listed rate for a similarly aged Magellan employee is $66.45 and the listed rate for a 75-year old Continental employee is $74.75.[4] Defendant fails to explain why there is a nearly 30% difference between the listed cost of insurance rate for a Hyatt employee and the listed rate for a Continental employee of the same age if, as Defendant would have this Court believe, the only factor to be considered is attained age.[5]

---

[3] Dkt. 69 at page 35 (Page 28 of the Citibank Policy).

[4] Further, the rates listed in the Continental rate chart (Exhibit C) are dangerously close (between 9-10%) to the maximum rates allowed by the only rate chart set out in the Citibank Policy -- the "Table of Guaranteed Maximum Life Insurance Rates" -- which was attached to the Complaint and the Amended Complaint.

[5] Defendant contradicts itself in the course of just three sentences in yet another attempt to confuse and mislead this Court. Defendant claims that the monthly cost of insurance rates charged by

| AGE | HYATT CORP. Rate per $10,000 | MAGELLAN HEALTH Rate per $10,000 | CONTINENTAL Rate per $10,000 |
|---|---|---|---|
| 75 | $57.78 | $66.45 | $74.75 |
| 76 | $63.52 | $71.80 | $74.75 |
| 77 | $69.48 | $79.06 | $79.06 |
| 78 | $75.74 | $88.55 | $88.55 |
| 79 | $82.50 | $97.92 | $97.92 |
| 80 | $89.98 | $106.49 | $109.49 |

Importantly, the rate charts in Defendant's Exhibits specifically provide: "Rates are subject to change but will not exceed the guaranteed cost of insurance shown in your Certificate." [Dkt. 2-1 at Pages 4, 6, and 8]. There is no undisputed evidence before this Court that these rate charts were ever provided to policyholders as a matter of course and without the need for a policyholder to specifically request a copy, or the rates listed in Defendant's Exhibits were the rates actually charged by Defendant, or the listed rates never changed, as allowed by the express provisions of those Exhibits, or whether Defendant ever charged the maximum amount allowed under the Citibank Policy, or whether Defendant charged some other amount.

B.      The Cases Relied Upon by Defendant Are Distinguishable and Inapposite.

In its motion to dismiss, Defendant relied upon a single case [*Day v. Taylor*, 400 F.3d 1272 (11th Cir. 2005)] as its sole "support" for the request to have this court consider Defendant's Exhibits. In its reply, Defendant relies on seven additional cases as "support" for having this Court consider documents which were not referenced in nor central to the Amended Complaint. However, each of the eight cases relied upon by Defendant are easily distinguishable and wholly

---

Defendant "have not changed nor, importantly, does Slam Dunk allege that they have ever changed" and then, just two sentences later, Defendant also argues that "the Amended Complaint is based on a theory that Connecticut General adjusted COI rates," which directly contradicts the claim Slam Dunk failed to allege any adjustments. [Dkt. 86, a p. 7].

CASE NO. 1:19-cv-21996-MGC

inapposite because, unlike here, the extra-judicial documents at issue in those cases were either (1) expressly referenced or specifically relied upon by name in the complaints at issue or (2) the specific contents of the extrajudicial documents were quoted or referred to in those complaints. Those factors are not present in this case.

For example, *Federal Ins. Co. v. Castle Beach Club Condo. Assoc., Inc.*, 2006 WL 3544835, at \*2 (S.D. Fla. Dec. 8, 2006), involved a declaratory judgment action filed by an insurance company seeking to rescind an insurance policy. The policyholder moved to dismiss. Although the policy was not attached to the complaint, the Court held that it could review a copy of the policy because the complaint expressly referred to the insurance policy in the complaint. Similarly, in *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010), the court ruled that the district court properly considered a copy of the Prime Broker Margin Account Agreement (the "PB Agreement") filed in opposition to a motion to dismiss because, even though the "PB Agreement was not attached to the complaint, the complaint noted that the brokerage account was opened" by certain documents and the plaintiff did "not deny that the PB Agreement is one of the account opening documents mentioned in the complaint."[6]

---

[6] *See also*, *Madura v. Bank of America, N.A.*, 767 F. App'x 868 (11th Cir. 2019) ("The Maduras' complaint outlined their prior lawsuits … and their claims were based almost entirely on the defendants' conduct during those prior lawsuits" thus, the Court properly reviewed filings in those prior lawsuits); *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir.1997) ("[W]here the plaintiff refers to certain documents in the complaint … the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal."); *Hoak v. Ledford*, 2016 WL 8948417, at \*7 (N.D. Ga. Sept. 27, 2016) ("A court may consider defendants' exhibits if … the plaintiffs refer to such documents in the complaint…."); and *Swanson v. Bank of Am., N.A.*, 566 F. Supp. 2d 821, 824 (N.D. Ill. 2008) ("The Seventh Circuit teaches, however, that a district court may consider extrinsic exhibits if the documents are both referred to in the complaint and are also central to the plaintiff's claims.")

Here, Slam Dunk's Amended Complaint involves claims of breach of contract and bad faith based upon group universal life insurance policies, an example of which provided to Citibank employees was attached as Exhibit A to the Amended Complaint. The Amended Complaint nowhere references or relies upon any rate charts issued by Defendant and, more specifically, neither the Citibank Policy nor the Amended Complaint references or mentions Defendant's Exhibits.[7] Further, unlike the plaintiff in *SFM Holdings*, Slam Dunk expressly and specifically disputes that the 2003, 2009, and 2010 Rate Charts were referenced in or relied upon by Plaintiff anywhere in its Amended Complaint.

Defendant's Exhibits here are entitled "Cost of Insurance Chart for Ported Rates." The phrase "cost of insurance chart" does not appear anywhere in the Amended Complaint or in the Citibank Policy, nor do the terms "rate chart" or "rate table" or "chart of rates" or "table of rates." In fact, the only reference to anything remotely like those phrases found in the Amended Complaint or the Citibank Policy is set out in Paragraph 29 of the Amended Complaint [Dkt. 69 at p. 10], which quotes the Citibank Policy language relating to the "Table of Maximum Life Insurance Rates" discussed above. The Amended Complaint's only other references to a "table" are set out in Paragraphs 39 to 45 of the Amended Complaint and they relate solely to mortality tables. As a result, unlike the cases relied upon by Defendant as "support" for their request that this Court

---

[7] Defendant attempts to confuse the issue here by claiming that, because the Amended Complaint "repeatedly refers to the rates that Slam Dunk is charged under its Policies" [Dkt. 86 at page 8], such references support allowing review of extra-judicial documents relating to 2003, 2009 and 2010 "Cost of Insurance Charts for Ported Rates," even though the Amended Complaint never refers to such charts and never relies on those charts to support any of Plaintiff's claims.

consider the 2003, 2009 and 2010 "Cost of Insurance Charts," the Amended Complaint never references those charts.

In the other category of cases mistakenly relied upon by Defendant, the complaints at issue included specific references to the "contents of documents" that were not attached to the complaint but which were considered by the courts in connection with a Rule 12(b)(6) motion.  For example, in *Day v. Taylor*, *supra*, the Eleventh Circuit concluded that the District Court had properly reviewed a document not attached to the complaint because "<u>the document's contents [were] alleged in a complaint</u> and no party question[ed] those contents."[8]  Here, unlike in *Day* or *Silicon Graphics*, the Amended Complaint filed by Slam Dunk nowhere mentions the contents of the 2003, 2009, and 2010 Rate Charts attached to Defendant's motion and its reply in support thereof.  As a result, these cases are wholly inapplicable and do not support the proposition for which Defendant cites them.

---

[8] The Ninth Circuit case relied upon by the court in *Day* [*In re Silicon Graphics Inc. Securities Litigation,* 183 F.3d 970 (9th Cir. 1999)] was based upon a similar finding; *i.e.*, a district court may properly "consider documents '<u>whose contents are alleged in a complaint </u>and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'" *Accord*, *Zapata v. Royal Caribbean Cruises, Ltd.*, 2013 WL 1296298, at *6 (S.D. Fla. Mar. 27, 2013) (cited by Defendant ("Plaintiff … <u>placed the agreement [where RCCL would sell the subject shore excursion] at the center of its joint venture claim</u>" which allowed the court to consider that agreement even though it was not attached to the complaint.); and *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1385 (10th Cir. 1997) (Although plaintiff did not attach a copy of a signed bid letter to the amended complaint the Court properly considered the letter in a 12(b)(6) motion to dismiss because "<u>frequently referred to and quoted from the [bid] letter and alleged that the letter alone satisfied the statute of frauds.</u>" ).

CASE NO. 1:19-cv-21996-MGC

## IV.    CONCLUSION

For all the foregoing, this Court should strike and not consider Defendant's Exhibits.

### Local Rule 7.1(a)(3) Certification

Plaintiff counsel certify they have conferred with all parties or non-parties who may be affected by the relief sought in the motion in a good faith effort to resolve the issues raised in the motion and have been unable to do so.

### CERTIFICATE OF SERVICE

I hereby certify that the foregoing document is being electronically filed on <u>April 22, 2020</u>, via CM-ECF, which will generate Notices of Electronic Filing to all parties or counsel of record.

Respectfully submitted,

By:    /s/ *Markenzy Lapointe*_____
Markenzy Lapointe
Florida Bar No. 172601
Pillsbury Winthrop Shaw Pittman LLP
600 Brickell Avenue, Suite 3100
Miami, FL 33131
Telephone:  786-913-4900
Telecopier:  786-913-4901
markenzy.lapointe@pillsburylaw.com
miadocket@pillsburylaw.com
nydocket@pillsburylaw.com